UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

-against-

THE PRE IPO MARKETPLACE INC., *et al.,*

                    Defendants.
------------------------------------------------------------X

**ORDER**
24 CV 6886 (AMD) (CLP)

**POLLAK**, United States Magistrate Judge:

On September 30, 2024, the Securities and Exchange Commission ("SEC") commenced this enforcement action against defendants Laren Pisciotti ("Pisciotti"), GlobalX VC LLC ("GlobalX") (collectively, the "Pisciotti defendants"), Principal Pre-IPO Consulting Group LLC ("Principal"), and several other entities and individuals. (See Compl.)[1] The SEC alleges that defendants violated Sections 20(b) and 20(d) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), (d), Section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), and Sections 209(d) and 209(e) of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-9(d) and 80b-9(e), through false and misleading statements made in connection with the sale of interests in private funds that purportedly held stock in private companies that had not yet held initial public offerings. (Id.)

Currently pending before this Court are two motions filed by the Pisciotti defendants and Principal (collectively, the "moving defendants") to stay this case pending resolution of a parallel

---

[1] The SEC also names the following defendants in its September 30, 2024 Complaint ("Compl.") (ECF No. 1): The Pre IPO Marketplace, Inc., Keyport Venture Partners, LLC, Keyport Venture Management, LLC, Keyport Venture Advisors, LLC, John LoPinto, and Robert Wilkos. (Id.) On February 28, 2025, the district court entered judgments against these defendants (ECF Nos. 39, 40), so the moving defendants are the only defendants who remain in this action.

1

criminal investigation. (ECF Nos. 32, 35). For the reasons set forth below, the Court denies the moving defendants' motions without prejudice to renew should the alleged criminal investigation develop further, or an indictment becomes imminent.

## FACTUAL BACKGROUND

From at least October 2019 until December 2022, the SEC alleges that defendants procured approximately $120 million from investors in the United States and abroad by using false and misleading representations to market and sell interests in private funds (the "Marketplace Funds") that purportedly held stock in private companies that had not yet held initial public offerings ("pre-IPO companies"). (Compl. ¶ 1). Specifically, defendants conveyed the following misrepresentations to investors: (1) the Marketplace Funds owned shares in the pre-IPO companies when they either did not own shares or did not own sufficient shares to cover the sales; (2) there were no upfront fees or commissions when defendants actually paid themselves and their agents $16 million in commissions through undisclosed price increases; (3) they had acquired their pre-IPO shares directly from the companies when they actually acquired them secondhand or purchased interests in third-party funds that owned the shares; and (4) that their funds and operating entities were registered with the SEC when they were not, providing investors with falsified SEC filings. (Id.)

Principal is alleged to be a New Jersey limited liability company, controlled by defendant Pisciotti, that has never been registered with the SEC. (Id. ¶ 16). GlobalX is alleged to be a Delaware limited liability company that has never been registered with the SEC, also controlled and 100% owned by Pisciotti. (Id. ¶ 17). The SEC alleges that GlobalX serves as the organizer and investment advisor for seven of the 31 Marketplace Funds, and that Principal marketed and referred investors to the Marketplace Funds. (Id. ¶¶ 16, 17). From 2009 until 2020, Pisciotti was

2

a registered representative and registered investment advisory representative who was associated with four registered broker-dealers and a registered investment advisor, and previously held Series 7, 63, and 66 licenses. (Id. ¶ 18).

In or around June 2020, Pisciotti began working with defendants Robert Wilkos and John LoPinto, helping to acquire pre-IPO shares for the Marketplace Funds through GlobalX, and soliciting potential investors for the Marketplace Funds on behalf of Principal, directly and indirectly through sales agents. (Id. ¶¶ 65-68). Aside from the first few months that she worked with the Marketplace Funds, the SEC alleges that Pisciotti and her sales agents were not registered with the SEC as brokers, nor were they associated with any broker-dealer registered with the SEC. (Id. ¶ 69). Pisciotti, Principal, and GlobalX allegedly lied to investors about not charging fees and commissions, their ownership of pre-IPO securities, and that the Marketplace Funds were registered with and supervised by the SEC. (Id. ¶¶ 71-83).

The SEC alleges that Principal and Pisciotti violated Sections 5(a) and (c) of the Securities Act by offering and selling securities without a registration statement in effect and with no applicable exemption (id. ¶¶ 115-117), and that these defendants also engaged in unregistered broker-dealer activity in violation of Section 15(a)(1) of the Exchange Act. (Id. ¶¶ 118-120). GlobalX and Pisciotti allegedly violated Sections 206(1), (2), and (4) of the Investment Advisors Act and Rule 206(4)-8 by acting as investment advisors, employing devices, schemes, or artifices to defraud, and/or engaging in transactions, practices, or courses of business that operated as a fraud or deceit on clients or prospective clients (id. ¶¶ 105-109), and by making false statements and/or engaging in fraudulent practices with respect to investors and prospective investors in the Marketplace Funds. (Id. ¶¶ 110-114). Principal and GlobalX are also alleged to have violated Section 10(b) of the Exchange Act and Rule 10(b)(5) (id. ¶¶ 102-

103), and Pisciotti is also charged with liability for those violations as an alleged control person of Principal and GlobalX.  (Id. ¶¶ 175-178, 185-188).  In the alternative, Pisciotti is charged with aiding and abetting the various violations outlined above.  (Id. ¶¶ 126-128, 134-136, 142-144, 150-152, 158-160, 166-168).

On January 31, 2025, the Pisciotti defendants filed a motion seeking to stay this action pending resolution of a parallel criminal investigation, based on their argument that a stay would avoid substantial prejudice to defendants.  (Pisciotti Mem.[2] at 1).  On February 14, 2025, defendant Principal filed a separate motion, also seeking a stay of this action, pending resolution of the parallel criminal investigation against Pisciotti and GlobalX.  (Principal Mem.[3] at 2).

The SEC opposed these motions on February 14, 2025 and February 21, 2025, respectively, arguing that a stay would harm the defrauded investors' interests as well as the investing public, and that defendants had failed to provide sufficient information to support their requested relief.  (See 2/14/25 SEC Opp.,[4] ECF No. 38).  Since Principal has largely echoed the Pisciotti defendants' arguments and the SEC's responses are largely the same, the Court only cites to Principal's motion papers when novel arguments are raised.

## DISCUSSION

It is well established that a stay of a civil proceeding is an "extraordinary remedy," SEC v. Collector's Coffee, Inc., No. 19 CV 4355, 2023 WL 3686173, at *2 (S.D.N.Y. May 26, 2023) (citing Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98-100 (2d Cir. 2012)). Although courts can stay proceedings as part of their inherent power to control the disposition of

---

[2] Citations to "Pisciotti Mem." refer to the Pisciotti defendants' Memorandum of Law in Support of Motion for Stay, filed on January 31, 2025 (ECF No. 32-1).

[3] Citations to "Principal Mem." refer to Principal's Memorandum of Law in Support of Motion for Stay, filed on February 14, 2025 (ECF No. 35-1).

[4] Citations to "2/14/25 SEC Opp." refer to [p]laintiff Securities and Exchange Commission's Opposition to Defendants Laren Pisciotti and GlobalX VC LLC's Motion to Stay Proceedings, filed February 14, 2025 (ECF No. 36).

cases on their dockets, see Harrington v. Crater, No. 17 CV 2343, 2021 WL 1091911, at *3 (E.D.N.Y. Mar. 22, 2021) (citations omitted), a stay is only warranted where denial would "'cause substantial prejudice to the defendant in violation of their constitutional rights,' and such cases are 'few and far between.'" SEC v. Collector's Coffee, Inc., 2023 WL 3686173, at *2 (quoting Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d at 98, 100, 100 n.15). The party seeking the stay bears the burden of demonstrating that a stay is needed. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d at 97 (citing Clinton v. Jones, 520 U.S. 681, 708 (1997)).

In this case, the moving defendants request a stay "pending resolution of a parallel criminal investigation based on the need to avoid substantial prejudice" to defendants. (Pisciotti Mem. at 1). To determine whether a civil proceeding should be stayed pending the outcome of a parallel criminal case, courts in the Second Circuit balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d at 99 (citations omitted). While courts utilize these factors to avoid prejudice, "[t]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." Volmar Distributors, Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

A. Overlapping Issues

Courts in this Circuit have recognized that the degree of overlap between the issues in parallel criminal and civil cases is "particularly significant" because "where there is overlap, there is a greater concern about self-incrimination." SEC v. Platinum Mgmt. (NY) LLC, No. 16

5

CV 6848, 2017 WL 2915365, at *4 (E.D.N.Y. July 7, 2017) (collecting cases). At this time, the Court does not have sufficient information regarding the substance of the alleged parallel criminal case to determine whether the degree of overlap weighs in favor of a stay.

The Pisciotti defendants assert that they are "aware of a parallel criminal investigation into similar conduct addressing issues overlapping with the SEC Action[,]" noting their "understanding" that the criminal investigation "remains ongoing and pending." (Pisciotti Mem. at 1). Based on their understanding, the Pisciotti defendants argue that the overlapping issues relate "generally to alleged misrepresentations to investors, incomplete disclosures regarding fees paid by investors in connection with their investments, use of unregistered sales agents to solicit investments, and offering or selling securities with no registration statement in effect or applicable exemption." (Id. at 4). They also argue that the potential witnesses in the "possible criminal action would certainly overlap" with the civil witnesses, and that said witnesses would likely refuse to testify or provide discovery out of fear of potential prosecution. (Id.)

The SEC contends that the moving defendants have failed to offer any information as to where the investigation is pending, if or when an indictment is anticipated, the extent to which any such indictment might overlap with the instant civil case, or how they became aware that a criminal investigation is actually pending.[5] (See 2/14/25 SEC Opp. at 3). The moving defendants respond by arguing that they are not required to demonstrate that the criminal and civil proceedings are "concentric circles," further noting that they have limited information because the criminal investigation is confidential. (ECF No. 37 at 2). Nonetheless, defendants argue that the Court is entitled to draw reasonable inferences as to whether the SEC's allegations would be sufficient to warrant a criminal investigation. (Id. (citations omitted)).

---

[5] Principal's motion is even less compelling as it merely incorporates the Pisciotti defendants' vague representations and arguments as to the allegedly pending criminal investigation. (See ECF No. 38 at 1, 3-4).

6

While defendants need not show that the civil and criminal issues completely overlap, defendants vaguely assert that they are "aware of a parallel criminal investigation into similar conduct . . . [that] remains ongoing and pending" without further corroboration or any details regarding the nature and scope of said investigation. (Pisciotti Mem. at 1). Other courts have denied requests for a stay where the only information provided is an uncorroborated statement from an unnamed prosecutor as to the existence of an investigation. See, e.g., CUTTR Holdings, LLC v. Patinkin, No. 05 CV 4537, 2006 WL 8076749, at *2 (D.N.J. Oct. 24, 2006). Here, we have even less information. Defendants have neither identified the source of their understanding as to the existence of the investigation, nor have they corroborated their claim through any other means. Moreover, the moving defendants' basic recitation of the SEC's claims, and their general assertion that the issues in the purported criminal investigation involve the same facts, is "simply not enough for the Court's analysis." SEC v. Plus Money Inc., No. 89 CV 764, 2008 WL 11338383, at *3 (S.D. Cal. Dec. 1, 2008); see also SEC v. Grossman, No. 87 CV 1031, 1987 WL 9192, at *2 (S.D.N.Y. Mar. 30, 1987) (finding that although the criminal and civil cases involved the same facts, a stay of the civil action was not warranted).

While the Court might draw the inference that a criminal investigation is warranted based on the conduct alleged in the SEC's Complaint, such an inference cannot support a stay based on a hypothetical criminal action.[6] Thus, this factor weighs against granting a stay.

B. Status of the Criminal Investigation

The SEC also contends that the second factor – namely, the status of any criminal proceeding – militates against a stay under these circumstances. (2/14/25 SEC Opp. at 4).

---

[6] Given that the unlawful conduct is alleged to have commenced in or around October 2019 and continued until December 2022 (see Compl. ¶ 1), the Court finds it probable that any criminal investigation should be developed enough for defendants to provide more detailed information, or at least the basis for their assertion that such an investigation is pending.

7

Courts in this Circuit generally deny requests for a stay where a defendant has not yet been indicted. See, e.g., SEC v. Constantin, No. 11 CV 4642, 2012 WL 1195700, at *4 (Apr. 9, 2012) (declining to grant stay where defendant was notified of pending United States Attorney's Office investigation but had not been indicted); JHW Greentree Capital, L.P. v. Whittier Trust Co., No. 05 CV 2985, 2005 WL 1705244, at *1 (S.D.N.Y. July 22, 2005) (noting that "while not dispositive, the difference between being a 'target' of an investigation and indicted weighs significantly against the granting of a stay"). However, the fact that a defendant has not been indicted "does not automatically tip the scales in favor of denying a motion to stay." Stamile v. County of Nassau, No. 10 CV 2632, 2011 WL 1754125, at *5 (E.D.N.Y. Jan. 31, 2011); see also Brock v. Tolkow, 109 F.R.D. 116, 119 n.2 (E.D.N.Y. 1985). Indeed, the Second Circuit has cautioned that a district court may stay a civil proceeding when the "related criminal proceedings are imminent or pending . . . ." SEC v. Garelick, No. 23 CV 5567, 2023 WL 8602840, at *2 (S.D.N.Y. Dec. 12, 2023) (quoting Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d at 98).

In this case, none of the moving defendants have been indicted, and they provide no evidence to demonstrate that an indictment is "imminent." At most, their bare, unsupported assertions suggest that a criminal investigation *might* be underway. (See Pisciotti Mem. at 1, 4; see also Principal Mem. at 2 (seeking a stay as to Principal pending the resolution of the criminal investigation against the Pisciotti defendants)). Defendants also cite factually distinguishable cases where (1) the criminal investigation was fully developed, (2) an indictment had issued or was imminent, (3) felony charges had been filed, or (4) the movant had been deemed a target of a federal criminal investigation. (See 2/14/25 SEC Opp. at 4 n.1, 5 n.2 (distinguishing cases cited in defendants' motion)). See, e.g., SEC v. McGinnis, 161 F. Supp. 3d 318, 323 (D. Vt. 2016)

(granting 90-day stay where indictment was imminent and evidence had been preserved through extensive discovery); Stamile v. County of Nassau, 2011 WL 1754125, at *5 (granting stay where "felony complaint had been filed and the evidence was being presented to a [g]rand [j]ury").

In the absence of an indictment or the filing of preliminary charges, the Court finds that this factor currently weighs against granting a stay.

C. The SEC's Interest in Proceeding Expeditiously

The Court now addresses the third factor – "weigh[ing] the private interests of the plaintiff in proceeding expeditiously against the prejudice caused by a delay." SEC v. Platinum Mgmt. (NY) LLC, 2017 WL 2915365, at *5. While not an exhaustive list, courts have found that a stay would not prejudice a non-moving party in cases where (1) the non-moving party did not oppose the requested stay, see id.; (2) there is no "significant burden" placed on the non-moving party by entry of a brief, limited stay, In re Cargo Shipping Services, No. 06 MD 1775, 2010 WL 5027536, at *2 (E.D.N.Y. Dec. 3, 2010); or (3) the stay merely delays discovery but does not prevent it entirely, see Gustave v. City of New York, No. 10 CV 3314, 2010 WL 3943428, at *3 (E.D.N.Y. Oct. 6, 2010).

The moving defendants note that the instant case is in its earliest stages – no answer or responsive pleading has been filed and discovery has not begun. (Pisciotti Mem. at 5). To support their argument that the SEC will not be prejudiced "by any stay until resolution of the criminal investigation" (id. at 6), defendants cite SEC v. McGinnis. 161 F. Supp. 3d at 323. However, this case is distinguishable; in McGinnis, the court found that the SEC would not be "substantially prejudiced by a ninety-day stay to determine whether an indictment will issue" because the case was based on "historical evidence that has been preserved through extensive

9

discovery[,]" and therefore, there was "no real risk that evidence will be lost[,] and witnesses' memories will fade if a stay is granted." Id.

Here, the SEC strongly asserts that a stay would prejudice its interests. Not only does a stay impact the "strong public interest in having the SEC pursue civil remedies concurrently with criminal law enforcement . . . ," but the SEC argues that a stay also risks the loss of evidence through witness relocation or fading memories. (2/14/25 SEC Opp. at 5-6 (citing cases)). The alleged unlawful conduct runs from October 2019 – over five years ago – and given the lack of information on the status of the criminal investigation, the SEC argues that a further indefinite delay would jeopardize the SEC's ability to effectively litigate its case and pursue the rights of investors injured by defendants' fraudulent conduct. (Id. at 6).

Based on the information currently available, the Court finds that the SEC's interest in moving this civil case to a determination likely to benefit the investing public weighs against granting a stay.

D.  The Burden on the Moving Defendants

The Pisciotti defendants argue that they would face a significant burden if the instant SEC case were allowed to proceed. (See Pisciotti Mem. at 6). Without a stay, Ms. Pisciotti will be forced to choose between waiving her Fifth Amendment rights or forfeiting the civil case through the operation of an adverse inference. (Id. (citing cases)). Principal argues that its liability is tied to Ms. Pisciotti's decision to invoke the Fifth Amendment because the SEC alleges that she controlled Principal. (Principal Mem. at 7).

In its opposition, the SEC first notes that GlobalX VC LLC is a corporation, which cannot claim the Fifth Amendment privilege, even if it is a one-person corporation.[7] (2/14/25

---

[7] While this argument is not explicitly outlined in the SEC's opposition to Principal's motion, it also applies to Principal.

10

SEC Opp. at 7 (citing In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 158-59 (2d Cir. 2010))). The SEC then argues that Ms. Pisciotti's position hinges on the possibility that "some indictment may happen at some future date, which could implicate her Fifth Amendment rights." (Id.) Not only do courts reject burden arguments based on "purely speculative" parallel criminal proceedings, see, e.g., U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp., Inc., 297 F. Supp. 2d 531, 535 (E.D.N.Y. 2003), but "forcing a defendant to assert his or her [Fifth Amendment] privilege in a civil action is constitutional." United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 911 F. Supp. 802, 807 (E.D.N.Y. 1992) (citing Brock v. Tolkow, 109 F.R.D. at 120).

The Court appreciates the serious dilemma of whether to waive one's Fifth Amendment privilege. However, the law explicitly provides that a jury can draw whatever adverse inferences are appropriate against a defendant who invokes this privilege and refuses to testify in a civil case. As the SEC argues, there is no absolute right to protection from the consequences of this choice.

Given that the existence and scope of a parallel criminal investigation are speculative, Ms. Pisciotti's concerns are currently premature, and this factor weighs against granting a stay at this time. If the criminal investigation becomes more defined over the course of the civil proceedings, the Court can always reconsider the issue of a stay.

E. Judicial Resources and the Public Interest

With respect to the fifth and sixth factors, the moving defendants argue that resolving the alleged parallel criminal investigation will "likely" further the Court's interest in preserving judicial resources and effectively managing its caseload by disposing of some or all overlapping issues, avoiding duplicative efforts, and increasing the possibility of settlement. (Pisciotti Mem.

11

at 7 (citing cases)). Defendants also argue that the "expeditious resolution of the criminal investigation, without the burden of a concurrent, duplicative civil proceeding" would serve the public interest, and that there is no potential continuing harm to the public if a stay is granted, given that the alleged conduct ended over two years ago. (Id. at 7-8 (citing cases)).

Again, the SEC disagrees on both grounds. (See 2/14/25 SEC Opp. at 8-9). Given the complete lack of evidence as to the status of the alleged criminal investigation or an indictment, the SEC first argues that the moving defendants effectively seek "an indefinite stay based on a hypothetical future criminal proceeding[,]" which weighs against granting a stay based on judicial economy. (Id. at 8 (citing cases)). The SEC then contends that there is a strong public interest in moving the civil proceeding forward because numerous investors suffered "substantial pecuniary harm" and many never received the pre-IPO shares they were promised as a result of defendants' allegedly fraudulent conduct. (Id.) These investors have a strong interest in recovering the shares they are owed and preventing the defendants from committing additional violations. (Id.)

The Court agrees with the SEC's position. As the court in SEC v. Constantin observed, judicial economy is "undermined by the indefinite suspension of civil proceedings[,]" which would occur in the instant case if a stay was granted based on defendants' vague representations. 2012 WL 1195700, at *4 (internal citations and quotation marks omitted). Furthermore, "[t]he public interest in [the recovery of] misappropriated funds is significant, particularly when weighed against the interest in a merely conjectural criminal prosecution." Id. See also SEC v. Thrasher, No. 92 CV 6987, 1995 WL 456402, at *16 (S.D.N.Y. Aug. 2, 1995) (noting that the "public has a strong interest in federal agency civil enforcement actions").

12

In sum, the public interest in the SEC's vindication of investors' rights and prevention of further misconduct is particularly strong in this case, and the Court cannot conceive of any benefit to judicial economy that would result from a stay under the current circumstances. As such, these factors also weigh against granting a stay.

## CONCLUSION

For the reasons set forth above, the Court denies the moving defendants' motions for a stay without prejudice to renew if circumstances change and a criminal prosecution materializes.

A copy of this Order will be mailed to defendant Laren Pisciotti. The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
May 12, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York