*** Filed ***
06:02 PM, 23 Jul, 2026
U.S.D.C., Eastern District of New York

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br> Plaintiff, | |
| -v- | **Case No.**<br>**24-CV-6886**<br>**(AMD) (PCG)** |
| **THE PRE IPO MARKETPLACE INC., et al.,**<br> Defendants. | |

**JOINT LETTER-MOTION REQUESTING AN INFORMAL DISCOVERY CONFERENCE**

July 23, 2026

Via ECF
**Hon. Peggy Cross-Goldenberg**
United States Magistrate Judge
Eastern District of New York

Dear Judge Cross-Goldenberg:

### DEFENDANT LAREN PISCIOTTI'S POSITION

Defendant seeks an order compelling the Commission to account for extensive disputed materials bearing her name and to produce the source, custody, authentication, and completeness information necessary to test them. Her defense is that her name, purported signatures, identity, and entities were used or attributed to her without authorization. Discovery has now exposed a pervasive attribution problem across corporate records, offering materials, and transaction documents that Defendant had never seen.

The production contains numerous purported signatures that are not Defendant's signatures, repeated misspellings and materially different versions of her name, unfamiliar records placing her in entities and positions of authority, and documents that appear altered, recombined, duplicated under different Bates families, or assigned to one producing party without identifying their true origin. Before the Complaint, on the record, and throughout discovery, Defendant consistently maintained that she was a victim of this conduct. The Commission had investigative-stage notice of alleged forgery and unauthorized attribution.

Those disputed and apparently altered records are not merely evidence Defendant seeks to exclude. They may affirmatively support her defense by showing that others used, altered, or attributed her name, signatures, entities, and authority without her knowledge. Defendant therefore seeks preservation, complete production, provenance, and the surrounding factual context— not destruction or wholesale exclusion of evidence favorable to her. What is impermissible is one-sided attribution of those materials to Defendant while their source and exculpatory significance remain unresolved.

The Commission nevertheless responds with generalized producing-party labels, a categorical privilege log, statements that third-party materials were produced "as received" or "as produced to" it, and directions to search metadata. Those responses do not disclose who created or supplied the disputed records, what versions existed, whether linked or underlying files were collected, what Defendant contends may have been altered, doctored, or misattributed by others, or what follow-up occurred after notice. Defendant raised these deficiencies in writing and during a good-faith meet-and-confer through July 21, 2026. The parties remain at an impasse.

### I. The Commission's production cannot be reconciled to its investigative record.

Exhibit A documents subpoenas, meetings, calls, preservation discussions, productions, replacement transmissions, testimony preparation, and cooperation contacts between the Commission and Richard B. Herman. Herman represented Robert Wilkos, Pre-IPO Marketplace, and Keyport Venture Partners, and transmitted mixed individual and entity materials through email, Dropbox, ZIP files, Relativity, and replacement exports. The correspondence states that documents remained "in process," subpoena compliance remained outstanding, one production method was rejected, and identified communications were missing.

For materials transmitted through Herman, the Commission assigned producing-party designations including "Robert Wilkos" and WILKOS_ROBERT and directed Defendant to look under Wilkos in the metadata. But Herman was the transmitting attorney for Wilkos, Pre-IPO Marketplace, and Keyport Venture Partners. A Wilkos producing-party label identifies where the Commission placed the material; it does not establish that Wilkos personally supplied, possessed, created, or authenticated it, or identify which Herman client or original custodian was the actual source. Nor does the production clearly distinguish responses to the February 2022, November 2022, and January 2024 Wilkos subpoenas from voluntary or entity materials. Defendant cannot reverse-engineer those facts because the Commission controls the receipt, processing, and investigative history.

### II. The record contains express warnings and unresolved objective gaps.

On August 27, 2022, Herman told the Commission that he was "holding off on sending the LoPinto desktop" because he did not want to risk supplying "potentially tainted evidence which may have a negative impact on the investigation." The

Commission later requested preservation while it determined how to review the desktop. Ex. A (000913238; 000921449; 000913205-06; 000921445-46). The production does not identify whether the computer was ever forensically collected or examined, who accessed it, or which produced files allegedly came from it.

Herman thereafter transmitted a desktop screenshot and a twenty-page composite titled "Laren Piciotti Forgery.pdf." The composite appears under multiple production identifiers and producing-party labels, combines records associated with different entities and apparent sources, repeatedly misspells Defendant's name, and contains signatures that are not Defendant's signatures. Counsel labeled examples "actual," "genuine," or "forged," but the production does not identify who made those classifications or their foundation. FNEX, GlobalX, and Pre-IPO materials from different apparent sources were grouped together without page-level provenance. Defendant and Herman's office also supplied pre-Complaint notice concerning unauthorized use of her name and electronic signature, but the produced record does not identify the resulting source investigation, authentication review, or correction, or whether the Commission showed, described, or used the disputed materials with any witness and later supplied corrective context.

The same defect affects the incomplete Valley National Bank materials concerning account ending in 6110. The production does not permit Defendant to determine the complete signer, ownership, account-opening, subpoena-return, or follow-up history. Producing the bank response "as received" does not establish that the Commission's investigative or discovery record is complete or disclose whether incomplete account records were used during testimony or elsewhere in the investigation.

### III. The production does not show meaningful follow-up after Wilkos's testimony.

Wilkos testified on February 7, 2024 and identified additional supporting records that existed or could be produced. Based on the production presently available, the only identifiable post-testimony requests concern limited corporate formation, governance, and ownership documents in May 2024. Defendant has not located a corresponding collection addressing the broader supporting record identified during the testimony. The issue is not whether every testimony exhibit is missing or whether the testimony was accurate; it is whether the Commission tested and completed the record before relying on it. The Commission should identify the follow-up that occurred or certify that none occurred beyond the May corporate-document requests.

### IV. Broad categorical privilege claims prevent the investigative record from being tested.

The log groups years of material into broad categories without identifying the individual documents, dates, participants, attachments, particularized subjects, or relationship to the disputed records. Rule 26(b)(5)(A) protects qualifying privileged matter; it still requires sufficient identification to assess the claim, and segregable nonprivileged material must be produced. Without a targeted document-level log, Defendant cannot determine whether relevant material was withheld, omitted, or never collected.

A defined example is the Sal Marotta/Jerry Sarabella recording, EPROD-SEC-DEFPS-001039858 / SEC-USDOJ-E-0000001, and responsive Max Infinity materials from a separate SEC matter. Defendant does not seek that entire case file. She seeks the limited nonprivileged record showing this recording's source, transfer into this matter, custody, authentication, surrounding materials, and witness use. The Commission's relevance and burden objections do not explain why the recording itself was produced here without that basic context.

### V. Rules 26(e), 34, and 37 require concrete relief.

The dispute concerns materially incomplete responses, the usability and completeness of ESI, and the SEC's failure to produce or identify responsive materials. See Fed. R. Civ. P. 26(e), 34(b)(2)(E), 37(a)(3)(B)(iv). Defendant requests an order compelling the Commission, within fourteen days, to:

**1.** provide a verified source-and-production reconciliation for the materials transmitted through Herman and designated "Robert Wilkos," WILKOS_ROBERT, SEC-WilkosR-E, or a related producing-party label, as identified in Exhibit A. Using existing transmittals, cover letters, processing records, load files, metadata, and reasonable inquiry, the Commission must identify the Herman client on whose behalf each production was made, the person or entity from whom the document originated, the original custodian and source, receipt date, production event, native and family relationships, and corresponding Bates ranges;

**2.** produce all responsive nonprivileged underlying files and existing factual records concerning the disputed documents, the LoPinto desktop, post-testimony collection, account ending in 6110, and the Marotta/Sarabella recording; for anything not produced, state after reasonable inquiry whether it was withheld, unavailable, never collected, or does not exist;

**3.** serve a targeted document-level privilege log for withheld materials responsive to these disputed categories, identify attachments separately, produce segregable nonprivileged portions, and submit genuinely disputed claims for in-camera review;

**4.** provide a sworn declaration from a knowledgeable representative giving a definite response, after reasonable inquiry, identifying which disputed materials the Commission presently intends to attribute to Defendant or rely upon and the source and authentication foundation for each, and responding to each of the following: (a) whether the Commission disputes that the identified versions materially differ in names, signatures, entity information, content, or source; (b) whether it contends each disputed document or category is authentic, genuine, accurate, or reliable and, if so, the nonprivileged factual foundation; (c) whether it identified apparent alteration, recombination, misattribution, or materially inconsistent versions in its custody, and when and by whom; (d) what investigative, corrective, supplemental, preservation,

or disclosure action followed, or that none occurred; and (e) whether its collection and production are complete. If they are not complete, the declaration must identify what is missing, unavailable, never preserved, never collected, withheld, or not produced. The Commission may not answer these factual questions solely by stating that materials were produced "as received" or by referring generally to metadata or privilege. Until compliance, the Commission should preserve all disputed materials and should not use them against Defendant without identifying their source and authentication foundation; this limitation should not prevent Defendant from using the same materials to support her defenses.

The Commission had years and pre-filing notice to preserve and test this evidence. If the ordered accounting shows systemic source, collection, or authentication failures, the reliability of the investigative record as a whole will be called into question. Permitting one-sided reliance on that record without reconciliation would create fundamental unfairness and risk treating evidence of third-party misuse as evidence against its alleged victim. If the record cannot be substantiated, material evidence was not preserved or collected, or the resulting prejudice cannot be cured, Defendant preserves her right to seek preclusion, striking of affected allegations or claims, dismissal before the District Judge, and other relief authorized by Rules 37(b) and (c).

Defendant attaches Exhibit A as part of this letter-motion and incorporates it for the limited purpose of presenting the documented timeline of subpoenas, contacts, meetings, preservation notices, productions, testimony, cooperation discussions, and the resulting discovery gaps. The relief presently requested concerns the specific categories documented in this letter and Exhibit A. Exhibit A is non-exhaustive only as to additional deficiencies that may later be discovered and timely raised in accordance with applicable rules and Court orders.

Nothing in this letter constitutes an admission or concession concerning the authenticity, accuracy, admissibility, completeness, authorization, attribution, custody, personal-knowledge foundation, or reliability of any document, testimony, account, entity record, signature, communication, or production designation referenced in this letter or Exhibit A. Subject to applicable rules, deadlines, and Court orders, Defendant preserves her existing discovery requests and objections, defenses, evidentiary challenges, right to supplement, and right to seek preclusion, sanctions, striking, dismissal, or other relief.

# COMMISSION'S POSITION[1]

Defendant Pisciotti's request compelling the Commission to "account for extensive disputed materials bearing her name and to produce the source, custody, authentication, and completeness information necessary to test them" should be denied.

*Procedural Deficiencies*

At the outset, the SEC notes that Defendant Pisciotti provided the SEC with a copy of this motion on July 23 at 6:41 AM EST and informed the SEC that she intended to file it by close of business that same day. Prior to the parties meeting and conferring on July 21, the Commission asked Defendant Pisciotti twice to identify the specific document request or interrogatory response she believed was deficient and/or outstanding. *See* **SEC Attachment A at pp. 1, 6**. She did not do so. Instead, on July 20, she emailed the SEC numerous new demands and noted her preparation of complaints "and other available legal actions" against SEC staff – a threat she repeated during the parties meet-and-confer. The SEC respectfully submits that this cannot continue.

Proceeding in this manner to-date with Defendant Pisciotti has been both inefficient and unproductive. The Commission has continued to attempt to move this case forward, including noticing and taking depositions. To-date, it has received no discovery from Defendant Pisciotti—but it has received an onslaught of demands, threats, and accusations from Defendant Pisciotti—many of which run afoul of the Federal Rules of Civil Procedure. SEC counsel recognizes that Defendant Pisciotti is *pro se* and represents that it has spent dozens of hours trying to respond, in good faith, to the many emails Defendant Pisciotti has sent rather than simply rejecting them out of hand—hours that it could have spent moving this case forward. She has also recently previewed for us her desire to file another extension request. We respectfully ask the Court to intervene here, including possibly scheduling bi-monthly status conferences in lieu of filing status reports to ensure this matter moves forward.

---

[1] We provided the following insert to Defendant Pisciotti at approximately 4:45PM EST on July 23. We note that our section is being provided to Defendant Pisciotti without having any opportunity to review any changes she may make in response to our section.

*Document Integrity Issues*

As for Defendant Pisciotti's specific allegations, at bottom, her arguments primarily relate to purported document authenticity/integrity issues. As we—and this Court—have noted for Defendant Pisciotti many times, including in the Court's May 28 Order and during the July 7 Discovery Conference, that Defendant Pisciotti disputes certain materials or their authenticity is something the fact-finder may consider at the dispositive motion stage or at trial, so this is not a discovery dispute at all.

*Metadata Issues*

With respect to her allegations regarding document metadata, as the SEC has represented to Defendant Pisciotti time and time again, it has produced the metadata available to it in the form agreed upon by Defendant Pisciotti. *See* **SEC Attachment A at pp. 39-42**. As is apparent from Defendant Pisciotti's own Exhibit A, it is clear that Defendant Pisciotti can use this metadata just as easily as the SEC can use this metadata. Absent a discovery request that is outstanding or a specific deficiency in one of its discovery responses or productions, the SEC is under no obligation to continue responding to Defendant Pisciotti. While we understand Defendant Pisciotti is not utilizing a document review platform to analyze the Commission's productions, it is not the responsibility of the SEC to continue to respond to Defendant Pisciotti's baseless demands.

*Robert Wilkos Production Concerns*

As for Defendant Pisciotti's allegations regarding documents produced by Defendant Robert Wilkos, she can again utilize the information we have already provided to her to locate these materials. For example, on July 16, Defendant Pisciotti emailed us asking for the documents referenced by Defendant Wilkos's former counsel on August 31, 2022. As we told her the same day, the metadata spreadsheet produced to her allowed her to find these documents, including by searching the date of the relevant production. *See* **SEC Attachment A at pp. 15-16**. And, as we have noted before, including in the June 18 Status Report, ECF No. 91, we have produced to Defendants all documents produced by Defendant Wilkos to the staff and the staff's communications with counsel for Wilkos during the investigation. We again produced these documents in the format we received them and provided all relevant metadata. It is not the SEC's responsibility to identify for Defendant Pisciotti who made certain "classifications" or to demonstrate their "foundation" for documents produced by a different party. To the extent Defendant Pisciotti seeks documents held by Defendant Wilkos outside the Commission's possession or control, ***she may serve him with a subpoena under the Federal Rules***.

*SEC's Internal Assessments*

Defendant Pisciotti also seeks documents and information regarding the SEC's own internal assessment of various documents and steps taken by SEC staff in connection with these materials. For example, she asks how the SEC used documents produced by Valley National Bank in its investigation or what additional steps the SEC took following Defendant Wilkos's investigative testimony. As we have said many times before, including in the June 18 Status Report, ECF No. 91, to the extent those steps are described in internal emails, memoranda, or other documents that were not provided to third parties (such as Defendant Wilkos's counsel) such internal documents are not only irrelevant to this action but are also subject to privileges, as outlined in the Commission's privilege log. *See* ECF No. 91-1.

*Specific Relief Sought*

Finally, as for the specific relief Defendant Pisciotti seeks, we note that Defendant Pisciotti has still not identified any discovery requests or responses that remain outstanding or deficient.

As for her demands regarding the privilege log, we refer the Court again to the June 18 Status Report, in which the parties raised their respective arguments regarding the sufficiency of a categorical log prior to the Court's July 7 Discovery Conference. With respect to the specific document Defendant Pisciotti references, as we have told Defendant Pisciotti repeatedly, we have produced all available metadata associated with this recording. This metadata includes, among other things, the date the file was produced, the time it was produced, the name of the producing party, and the name of the file, referencing the date of the recording. Also, during the SEC's July 15, 2026 deposition of Salvatore Marotta, which Defendant Pisciotti attended, Mr. Marotta authenticated and answered questions about this recording. Defendant Pisciotti was afforded an opportunity to ask Mr. Marotta whatever questions she wanted about the recording, and declined to do so. It is unclear what more Defendant Pisciotti is hoping to get from this.

Finally, Defendant Pisciotti's request for a sworn declaration from the Commission, describing, among other things, what "disputed materials the Commission presently intends to attribute to Defendant or rely upon[,]" is not only improper in that it seeks privileged information concerning the Commission's own internal assessment of documents, but it is also wholly irrelevant to the claims at issue. At trial or in response to a dispositive motion, Defendant Pisciotti will have an opportunity to defend herself against these purported disputed records. Discovery is not the time for this.

Defendant Pisciotti's requests should be denied.

**Defendant Pisciotti Request**

Defendant Pisciotti requests an informal discovery conference. The parties disagree concerning the merits of Defendant's requested relief.

Respectfully submitted,

**/s/ Laren Pisciotti**
Laren Pisciotti, Pro Se
16 Conover St. Manalapan, NJ 07727
732-299-8706
Larenpisciotti@yahoo.com

**Counsel for the Securities and Exchange Commission:**

*/s/ Daniel J. Ball*
Daniel J. Ball
John B. Timmer
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-7687 (Timmer)
(202) 551-5987 (Ball)
Email: TimmerJ@SEC.gov
Email: BallDan@SEC.gov

Richard B. Herman–SEC Communications and Production Chronology

Purpose and scope: This exhibit provides a non-exhaustive chronology of presently identified communications and events relevant to the discovery issues addressed in the accompanying motion to compel. The entries summarize what the cited records state and are included to provide chronological context. This chronology reflects a limited review and does not identify every potentially relevant record or event. Nothing in this exhibit waives or limits any other discovery request, dispute, objection, right, remedy, or motion to compel.

| Date | Communication | What the cited record states | Bates / source |
|---|---|---|---|
| Feb. 4, 2022 | SEC → Wilkos; Keyport entities; Pre-IPO Marketplace | The SEC serves separate subpoenas on Wilkos, the Keyport entities, and Pre-IPO Marketplace. Responses are due February 18. The subpoenas request native files, metadata, an itemized cover list, and information describing the custodians and searches. | Wilkos 000914612–000914614; Keyport 000914639–000914641; Pre-IPO Marketplace 000914697–000914699 |
| Aug. 17, 2022 | Herman office → Chung | Herman's office sends correspondence entering the matter. The correspondence identifies Herman's representation of Robert Wilkos, Pre-IPO Marketplace, and Keyport Venture Partners. | 000913243 |
| Aug. 24, 2022 | Chung → Herman and Plaumann | Chung confirms that the SEC will participate virtually in the August 30 EDNY meeting and asks Herman to produce the documents he plans to discuss before the meeting. | 000921452 |
| Aug. 26, 2022 | Chung ↔ Herman; SEC production unit | Chung thanks Herman for the call that day and provides production instructions. Herman's office sends a letter and a Dropbox link containing materials for the August 30 meeting. | 000921450–000921451; 000913239–000913240; duplicate 000945811–000945813 |
| Aug. 27–29, 2022 | Herman ↔ Chung and Doisy | Herman states that he is holding the LoPinto desktop pending SEC guidance because accessing it could produce "potentially tainted evidence." On August 29, he sends a desktop screenshot and an attachment titled "Laren Piciotti Forgery.pdf." | 000913238; 000921449; 000907621–000907642; duplicate 000945789–000945810 |
| Aug. 30, 2022 | Herman; SEC; EDNY meeting | The scheduled meeting takes place. The August 31 email describes itself as an "initial follow-up to our meeting." | 000921452; 000913213–000913214 |
| Aug. 31–Sept. 1, 2022 | Herman → Chung and SEC production unit | Herman lists documents discussed or promised at the meeting, sends a Dropbox link, states that cover emails and completed bank statements remain "in process," and proposes a call for September 1. | 000913212–000913214; duplicate 000946166–000946170 |
| Sept. 8, 2022 | Doisy and Chung ↔ Herman | The SEC asks Herman to confirm that his clients will retain and preserve the desktop while the SEC determines how to review it. Herman confirms preservation. | 000913205–000913206; 000921445–000921446 |
| Sept. 12, 2022 | Herman → Chung; Chung → production unit | Herman sends bank statements. Chung states that she forwarded them to the SEC production unit. | 000913184 family; 000921443 |
| Oct. 4, 2022 | Chung → Herman | Chung states that subpoena compliance remains outstanding and requests communications and documents concerning ownership of pre-IPO shares. | 000913131; 000921430; 000921437 |
| Oct. 18–21, 2022 | Chung and Doisy ↔ Herman | After a conversation, Chung confirms an October 21 noon meeting with Herman at the SEC's New York office. Later correspondence refers to an October 21 agreement. | 000913093; 000921434; 000947937 / SEC-EMAILS-E-00002322 |
| Oct. 25, 2022 | SEC ↔ Herman office | The SEC states that it cannot accept a Relativity link and asks for export of the actual documents. Herman's office later states that the documents were sent in a ZIP file. | 000913079–000913081; 000925705–000925706 |
| Nov. 1–18, 2022 | SEC ↔ Herman and Wilkos | The SEC serves an additional subpoena on Wilkos on November 1. Herman responds on November 15. On November 18, the SEC identifies missing Wilkos communications and requests a chart. | 000919769–000919770; 000947937; SEC-EMAILS-E-00002322; 000913072 |
| Nov. 30, 2022 | Herman office → Chung, Doisy, and SEC production unit | Herman's office forwards an eight-page cease-and-desist letter during the investigation. The letter states that counsel's investigation identified repeated unauthorized use of Laren Pisciotti's electronic signature on offering documents. The letter describes the challenged electronic signatures as fraudulent and unauthorized. | Transmission 000913059–000913061; letter 000913062; SEC-EMAILS-E-0002310 et seq. |
| 2023 supplements | SEC ↔ Herman and Wilkos | The SEC requests documents referenced at a December 2022 proffer, a referral list, and information concerning Frances Wilkos's brokerage accounts. Herman's office sends supplemental productions. | 000912926; 000921619; 000921617–000921618 |
| Jan. 12–23, 2024 | Chung ↔ Herman office | The SEC schedules Wilkos's testimony and requests offering documents for Dataminr, Stewarts, and ZocDoc. Herman's office sends responsive documents before the testimony. | 000911697; 000920843; 000920822–000920823 |
| Jan. 25–26, 2024 | Herman ↔ Chung | Herman asks, "Are you sending me the cooperation agreement?" while confirming the February 7 testimony. Chung responds that any potential cooperation agreement will be discussed after the testimony. | 000911327–000911328; 000911325–000911326 |
| Feb. 7, 2024 | Wilkos testimony; Herman and SEC | Wilkos appears for sworn testimony. Herman's day-of email states that they are online and waiting to enter. | 000911324; testimony subpoena and transcript/exhibit index to be supplied |
| May 1–22, 2024 | SEC ↔ Herman and Wilkos | The SEC requests entity formation, governance, and ownership documents for identified Pre-IPO and Keyport entities. Herman's office sends entity documents on May 7. | 000919360–000919361; May 7 family beginning 000910971 |
| June 10–14, 2024 | SEC ↔ Herman | After a call, the SEC proposes a resolution for Wilkos. The proposal states that monetary remedies will be determined after his anticipated cooperation in litigation against other possible defendants. Additional emails schedule calls. | 000910956–000910960; 000910949–000910952 |

**From:** Laren Pisciotti
**To:** Jon-Jorge Aras; Ball, Daniel
**Cc:** Timmer, John
**Subject:** Re: Formal Deficiency Notice — Rule 33 and Rule 34 Responses and Wilkos Productions
**Date:** Tuesday, July 21, 2026 11:08:54 AM
**Attachments:** image001.png
image002.png
image001.png
image002.png

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Daniel,

Let's meet and confer at 1:30 p.m today.

The deficiencies and the Bates numbers at issue have already been identified extensively.

It is not my responsibility to put Humpty Dumpty back together again.

Laren Pisciotti

On Tuesday, July 21, 2026 at 10:20:36 AM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Ms. Pisciotti —

Consistent with the Federal Rules of Civil Procedure, we responded to your Rule 33 and Rule 34 requests. Again, please identify the *specific* document request or interrogatory response you believe is deficient and/or outstanding. That way, we can try to resolve this to avoid Court intervention or at least try to narrow these issues before presenting these to the Court. Absent a specific request that remains outstanding or deficient, we are not obligated to respond to you.

And, just to be clear, we have produced all available metadata to you in connection with our productions in the format you agreed to (see your May 21 email attached). You are, therefore, just as capable as we are in determining when Mr. Herman produced what documents when he was representing Mr. Wilkos. Also, as for your other request relating to the number of investors and funds raised, see our response to your ROG 1, in which you requested support for the allegations in the SEC's complaint, among other things.

I am available today to meet-and-confer after noon apart from between 2:30PM-3:30PM EST or Wednesday apart from between 2-2:30PM EST. If you need more options, let me know.

Thanks,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**   +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov



U.S. Securities and
Exchange Commission

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Monday, July 20, 2026 10:45 AM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Timmer, John <TimmerJ@SEC.GOV>;
Ball, Daniel <BallDan@SEC.GOV>
**Subject:** Re: Formal Deficiency Notice — Rule 33 and Rule 34 Responses and Wilkos
Productions

> **CAUTION:** This email originated from outside of the organization. Do not click links or
> open attachments unless you recognize the sender and know the content is safe.

Daniel,

After more than 30 additional hours reviewing the Commission's production, there appear to be missing or incomplete document families associated with Richard Herman's communications and productions on behalf of Robert Wilkos.

Mr. Herman's communications reflect materials transmitted through email attachments, hyperlinks, Dropbox, ZIP files, Relativity, and other electronic-production methods. The underlying materials are not consistently maintained within the same document families as the transmitting emails, nor are they reliably connected through attachment ranges, parent-child relationships, metadata, or Bates cross-references. I should not be required to search productions attributed to different producing parties to reconstruct what Mr. Herman transmitted, particularly where Pre-IPO Marketplace materials appear under multiple producing-party designations during overlapping time periods.

I will not wait any longer for qualified or inaccessible responses. The Commission has repeatedly stated only that it "believes" materials were produced or that it is someone's "understanding" that they were produced. I require factual responses supported by actual Bates numbers. Mr. Timmer, or another Commission attorney who has worked on and remains involved in this matter, including Mr. Connor, who participated in prior calls, can provide that information in writing before the meet-and-confer.

Please identify the actual Bates numbers for every production made by or through Richard Herman on behalf of Robert Wilkos, including every attachment, hyperlink, Dropbox submission, ZIP file, Relativity production, native file, and complete document family. If any of those materials were produced elsewhere or under another producing party, custodian, or Bates range, identify the specific Bates cross-reference connecting them to the Herman communication.

Please also identify the actual Bates numbers for every document through which Mr. Herman, Mr. Wilkos, or any other source represented which versions of my name, signatures, or documents were genuine, authorized, forged, altered, fabricated, unauthorized, invalid, or otherwise disputed, including documents concerning GlobalX and related or affiliated entities. There are multiple versions and misspellings of my name, multiple purported signatures, and inconsistent documents throughout the production. I require the underlying documents, transmitting communications, comparison exemplars, native files, metadata, and all differing, corrected, supplemental, or replacement versions—not general references to broad production ranges.

SEC-EMAILS-E-0002322 reflects Mr. Herman transmitting Mr. Wilkos's representations concerning approximately $20 million and an additional approximately $100 million. Those figures total approximately $120 million and match the amount alleged in both the Commission's Complaint and public press release. Please identify the actual Bates numbers for the documents the Commission contends substantiate those amounts as factual, rather than merely repeating representations made by a principal of the business.

I also continue to defend against allegations involving more than 900 investors, yet I still have not received the complete investor list or the

records identifying those investors. Please provide the actual Bates numbers and complete Bates ranges for the complete investor list and supporting records—not general production ranges or producing-party references. If the Commission does not possess a complete investor list or supporting records, please state that expressly.

I specifically advised the Court that I did not know the full universe of forged, altered, unauthorized, or misused documents that existed. The Commission disputed that concern before discovery had begun and before I had answered the Complaint. The documents I am identifying now are being seen by me for the first time. They are not the same documents previously brought to the Court's attention and demonstrate why my concern was well-founded. The Commission should not characterize these issues as previously raised or resolved.

The attached New Jersey filing is also significant. The entity is a single-member LLC, yet the filing identifies John LoPinto as a "general partner." The Commission has repeatedly cited the related civil lawsuit on the record and during meet-and-confer discussions as factual, and I identified on the record the specific exhibit containing this filing. Please provide the actual Bates number for that filing and the actual Bates numbers for every document showing what the Commission did to determine who prepared, signed, submitted, or authorized it, including source records, communications, filing metadata, investigative notes, or related materials. If the Commission did not investigate the origin or authenticity of that filing before relying upon it or citing the related lawsuit, please state that expressly.

I also notified the Commission in 2022 concerning the bank account associated with my entity. Based on the limited records produced, it appears that the signature cards and photographic identification associated with that account are connected to Mr. Wilkos and Mr. LoPinto. Valley Bank will be served with a Rule 45 subpoena today. The Commission refused to seek the records missing from the response to its own subpoena and stated that it produced the bank's subpoena response "as received." I will therefore seek the complete production directly from Valley Bank.

The issues presented here extend beyond ordinary production mechanics. They concern forged and doctored documents, disputed signatures, misuse

of my name, identity, and entities, false or unsupported representations, communications concerning those representations, and testimony by Mr. Wilkos in which he attributed roles to me while acknowledging that those statements were not true. Many of these materials are being seen by me for the first time despite the Commission's prior notice of these issues.

The Commission's conduct has enabled and prolonged the alleged fraud, forgeries, and misuse of my identity and entities by refusing to correct, identify, or reconcile the disputed materials after receiving notice of them. By continuing to rely on incomplete productions, unresolved authenticity issues, and representations that have not been tied to specific supporting evidence, the Commission has preserved a narrative dependent on disputed and incomplete materials.

I am not requesting a narrative response, a new calculation, or a new interrogatory answer. I am requesting the actual, specific Bates numbers necessary to determine what was produced, where it was produced, whether the Herman and bank productions are complete, which documents were represented as genuine or disputed, and what evidence supports the approximately $120 million and more than 900 investors alleged publicly by the Commission.

General references to Attachment B, broad producing-party ranges, or statements of belief and understanding are not sufficient. If the Commission cannot provide the specific Bates-numbered evidence supporting these allegations, cannot identify the complete investor list, cannot establish the source and authenticity of the New Jersey filing, and cannot account for the missing Herman and bank materials, then the Commission should dismiss the claims against me rather than continue litigating allegations unsupported by a complete and reliable evidentiary record.

Absent prompt resolution and complete written supplementation, I am preparing bar complaints and other available legal actions. I also face time constraints in determining and preserving claims arising from the apparent misuse of my name and entities, the disputed documents and signatures, the bank account I reported in 2022, and the Commission's handling of these matters. I reserve all rights and will seek dismissal, sanctions, evidentiary relief, and every other remedy available to the fullest extent permitted by

law.

Regards,
Laren Pisciotti


On Monday, July 20, 2026 at 08:18:14 AM EDT, Ball, Daniel <balldan@sec.gov> wrote:


Ms. Pisciotti —

As we have said many times before, we believe we have produced all nonprivileged documents and communications from the investigation to you. Mr. Timmer also responded to your specific question about the Dropbox link. I'd also refer you to our initial disclosures, specifically Attachment B, which provides the names of various producing parties and relevant Bates-stamps associated with those productions.

As for your request concerning other documents and communications produced by counsel for Mr. Wilkos, as we've said before, including in the June 18 Status Report, ECF No. 91, we have produced to you all documents produced by Mr. Wilkos and the staff's communications with counsel for Mr. Wilkos during the investigation, including any associated metadata provided with these documents and communications.

Separately, it'd be helpful for you to identify which specific document requests/interrogatories are at issue, so we can respond. This will ensure any meet-and-confer is as efficient as possible. In terms of scheduling this, I'm traveling today but available tomorrow (7/21) after 10AM EST and apart from 3PM-3:30PM EST. I could also do Wednesday (7/22) apart from between 2-2:30PM.

Thank you,

Daniel


**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**    +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Sunday, July 19, 2026 11:19 PM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>

**Subject:** Formal Deficiency Notice — Rule 33 and Rule 34 Responses and Wilkos Productions

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

This is formal notice of deficiencies in the Commission's existing Rule 33 and Rule 34 responses and production. These issues concern discovery already served and previously raised with the Commission. This is not a new interrogatory or request for production.

Discovery shows that Robert Wilkos, through his attorney Richard B. Herman, provided materials to the Commission from 2021 through 2024 through Dropbox, ZIP files, Relativity, email attachments, and other electronic-production methods. The Commission accepted, reviewed, and repeatedly requested additional materials concerning those productions.

The following deficiencies remain:

- The complete contents of the Dropbox, ZIP, Relativity, email, and other submissions cannot be located or matched to complete Bates-numbered document families.
- Documents bearing variations of my name—including Laren, Loren, and Lauren—purported signatures, alleged forgeries, disputed authorization, suspected fraud, and associated entities lack a reliable chain of custody.
- Pei Chung and other Commission personnel had notice by at least 2022 of alleged forgeries and possible misuse of my name and signature before charges were filed.
- Apart from apparent corporate documents, I have not identified any production from Mr. Wilkos through Mr. Herman following Mr. Wilkos's February 7, 2024 testimony.
- The Commission has not identified whether it requested, received, collected, or preserved additional materials after that testimony.
- The produced communications show that Elizabeth Doisy directed Mr. Herman to preserve the LoPinto computer, Mr. Herman confirmed its preservation, and later advised that access was available while asking how to proceed without tainting the evidence. The production does not

establish whether the Commission accessed, collected, imaged, searched, copied, or declined to collect the computer or its contents. No complete chain of custody, forensic image, file inventory, access record, collection report, or metadata has been identified.

- The complete list of approximately 900 investors and supporting records concerning securities sold, purchases, allocations, share availability, and alleged shortfalls cannot be located or matched to complete Bates ranges, although the communications show the Commission repeatedly requesting related materials from Mr. Wilkos through Mr. Herman.
- The Rule 33 and Rule 34 responses state generally that responsive materials were produced or were being produced without identifying specific Bates ranges or confirming that production is complete.
- Blanket privilege assertions or general statements that documents are "in the production" do not identify the responsive materials or permit the completeness of the production to be evaluated.
- The Commission defines the relevant period as March 23, 2021 through September 30, 2024, although the Complaint alleges conduct beginning in October 2019 and the Commission's privilege log identifies materials dating from December 2020 through the present.
- The responses contain an apparent date error stating that a May 1, 2026 production was reproduced on June 4, 2025.

To cure these deficiencies, please:

- Produce the complete contents of every Dropbox, ZIP, Relativity, email, and other submission made by Mr. Wilkos through Mr. Herman;
- Produce all attachments, linked files, native files, complete document families, supplements, corrections, replacements, duplicates, and differing versions;
- Produce all materials concerning my name, variations of my name, purported signatures, alleged forgeries, disputed authorization, suspected fraud, and associated entities;
- Produce all communications and records concerning the preservation, access, collection, review, search, imaging, copying, analysis, or decision not to collect the LoPinto computer;
- Produce every file, screenshot, forensic image, extraction, inventory,

report, log, native file, and item of metadata obtained from or concerning the LoPinto computer;

- Produce the complete investor list and all supporting records, supplements, corrections, accounting, stock-account records, and communications concerning securities sold, purchases, allocations, available shares, and alleged shortfalls;
- Identify all materials received from Mr. Wilkos through Mr. Herman after February 7, 2024, or confirm that nothing other than corporate documents was received;
- Provide available metadata identifying the source, producing party, custodian, SEC receipt date, filename, source path, Bates numbers, family relationships, relevant dates, and hash values;
- Provide in writing the specific Bates ranges for anything the Commission contends was already produced;
- State whether any responsive materials were not downloaded, collected, preserved, or retained; are unavailable; remain with another custodian; or are being withheld;
- Specifically identify any materials withheld and the basis for withholding; and
- Correct the relevant period and erroneous reproduction date and supplement the responses and production accordingly.

An email, cover letter, broken link, or file list is not production of the underlying files. Documents and factual metadata concerning my name or purported signature do not become privileged merely because they were transmitted to or reviewed by attorneys or Commission personnel.

Because these are deficiencies in existing responses and production, they must be corrected and supplemented promptly. I do not agree that correction requires service of new discovery requests or permits another 30-day response period.

I remain available to meet and confer on Monday, July 20, or Tuesday, July 21, 2026. Another conference, however, does not extend the time to cure these existing deficiencies.

The alleged forgery and misuse of my name and signature affect me personally, and the production shows that Ms. Chung had notice of these issues before charges were filed. The absence of the complete underlying

materials and an accurate production record requires immediate correction so I can protect my rights and take appropriate action.

Please confirm promptly whether the Commission will cure these deficiencies. If the Commission does not promptly cure them, I will seek appropriate relief from the Court through a motion to compel.

Regards,

Laren Pisciotti

On Friday, July 17, 2026 at 05:09:13 PM EDT, Timmer, John <timmerj@sec.gov> wrote:

These are Interrogatories and should be formally sent as such. Thanks, and have a good weekend.

Best,

John

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Friday, July 17, 2026 4:54 PM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
**Subject:** Re: Meet and Confer / Outstanding Rule 34 Production Deficiencies

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**John,**

You stated that **"my understanding is that the materials from that Dropbox link have been produced to you"** and directed me to search the production metadata for materials attributed to Robert Wilkos with a production date of August 31, 2022.

The SEC's production contains communications between Richard B.

Herman, counsel for Robert Wilkos, and SEC Enforcement personnel, including Pei Chung and Elizabeth Doisy, concerning documents bearing my name, documents represented by Mr. Herman as examples of my genuine signature, alleged forged signatures, supporting records, and the LoPinto desktop.

The relevant produced communications include:

EPROD-SEC-DEF-000912460 / SEC-EMAILS-E-0002454
EPROD-SEC-DEF-000912470 / SEC-EMAILS-E-0002464
EPROD-SEC-DEF-000912466 / SEC-EMAILS-E-0002460
EPROD-SEC-DEF-000941245–000941246 / SEC-WilkosR-E-0000378–0000379
EPROD-SEC-DEF-000912467–000912468 / SEC-EMAILS-E-0002461–0002462
EPROD-SEC-DEF-000912461–000912462 / SEC-EMAILS-E-0002455–0002456
EPROD-SEC-DEF-000912464 / SEC-EMAILS-E-0002458
EPROD-SEC-DEF-000941248 / SEC-WilkosR-E-0000381
EPROD-SEC-DEF-000912459 / SEC-EMAILS-E-0002453

The Dropbox link transmitted by Richard B. Herman on August 31, 2022 is:

[https://www.dropbox.com/scl/fo/suuea6l698smy135xsg70/h?dl=0&rlkey=pd1nuxj85eoy2piyuv2dems83](https://www.dropbox.com/scl/fo/suuea6l698smy135xsg70/h?dl=0&rlkey=pd1nuxj85eoy2piyuv2dems83)

Please identify:

1. The total number of documents and files contained in or transmitted through that Dropbox link; and
2. The specific Bates number or Bates range corresponding to each document and file contained in or transmitted through the link.

Please also identify the Bates numbers for every document,

attachment, file, image, upload, link, screenshot, document family, or other material transmitted by or between Richard B. Herman and SEC Enforcement personnel, including but not limited to Pei Chung and Elizabeth Doisy, that relates to the communications identified above.

This request includes materials sent directly, copied to others, transmitted through Dropbox or any other file-sharing platform, or referenced during related telephone calls or meetings.

With respect to the LoPinto desktop, Elizabeth Doisy wrote:

**"Please confirm that your clients are retaining and preserving the LoPinto desktop referenced below while we sort out the best manner in which to review the evidence contained on the desktop."**

Mr. Herman responded:

**"You are 100% accurate as I assured Ms. Chung."**

Please identify the Bates numbers for any forensic image, copied data, extracted files, screenshots, inventories, reports, logs, or other materials obtained from, created from, or concerning the LoPinto desktop, including any materials reviewed, collected, received, preserved, copied, or transmitted following Ms. Doisy's request.

As I previously requested, Mr. Ball advised that requests of this nature should be submitted through Rule 34 rather than by further correspondence. If that remains the Commission's position, please confirm whether the Commission prefers that these document-identification requests—including requests for Bates numbers associated with the Dropbox submission, the Herman/Wilkos communications, and the LoPinto desktop—be served as formal Rule 34 requests.

Because these communications concern documents bearing my

name and purported signatures, I am seeking to identify precisely which documents contain my name or purported signature, which documents Mr. Wilkos or Mr. Herman represented to the Commission as containing my genuine signature, which they represented as containing a forged signature, the basis for those representations, and the Bates number corresponding to each such document.

I have been unable to locate within the SEC's production the complete underlying materials associated with these communications or to match the materials referenced in them to specific Bates numbers. A general reference to Robert Wilkos as the producing party and August 31, 2022 as the production date does not identify the Bates-numbered documents corresponding to each referenced item.

This appears consistent across the Herman/Wilkos communications, in which produced emails reference documents, attachments, files, images, and other transmitted materials, but the corresponding underlying materials cannot be located or matched to specific Bates numbers.

Let us begin with these materials.

I reserve all rights. This request is not limited to the specific materials or issues identified above.

Please respond promptly.

Sincerely,
**Laren Pisciotti**


On Friday, July 17, 2026 at 03:32:49 PM EDT, Timmer, John <timmerj@sec.gov> wrote:


Ms. Pisciotti,

My understanding is that the materials from that DropBox link have been produced to you. You may wish to check the metadata we gave you, as Daniel described, and look for files from producing party Robert Wilkos with a production date of 20220831 (the date of the submission you gave below).

Best,
John

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, July 16, 2026 5:50 PM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>
**Cc:** Timmer, John <TimmerJ@SEC.GOV>
**Subject:** Meet and Confer / Outstanding Rule 34 Production Deficiencies

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Daniel,

Thank you for your response.

The Court directed the parties to meet and confer regarding the outstanding discovery issues. The issues I identified remain unresolved.

These materials were sent to the Commission during the investigation, and the Commission responded to and communicated about them. The requests seek production of existing documents and communications concerning those identified materials. They do not seek narrative interrogatory responses.

I dispute the Commission's characterization of these requests as interrogatories and its position that I have exhausted my interrogatories. Nonetheless, for present purposes, I will address the requested documents and related communications through formal Rule 34 requests and reserve the right to raise that dispute with the Court.

To be clear, the Dropbox link referenced in the recently produced communications is no longer functional. Either the Commission

accessed and collected the Dropbox materials and must produce them and the related communications, or it permitted evidence to be submitted and handled through an inaccessible link without ensuring that the underlying documents were properly collected, preserved, and maintained.

This reflects either an inadequate investigation before filing the Complaint, a failure to properly collect and preserve the submitted materials, and/or an effort to maintain the Commission's existing narrative despite the deficiencies reflected in its own production.

The Commission's response does not meaningfully address the actual deficiencies or missing materials and does not reflect good-faith participation in the Court-directed meet-and-confer process.

Because the parties are operating under Court-imposed deadlines, these existing production deficiencies should not be delayed through another full response period.

Please let me know your availability to continue the meet and confer and whether the Commission will agree to expedite its responses and production in light of the Court-imposed deadlines. You should also expect my formal Rule 34 requests shortly.

Regards,
**Laren Pisciotti**

On Thursday, July 16, 2026 at 04:46:34 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Ms. Pisciotti —

As we said previously, we will not respond further to informal discovery requests. If you are sending us a request, please do so consistent with the Federal Rules of Civil Procedure.

I'll note, however, that we view your request below as an improper Rule 33 interrogatory (as noted in our responses to your Rule 33 requests, we believe you have already exceeded the maximum number of interrogatories permitted under that rule absent leave from the Court to serve more).

Notwithstanding this, I'll remind you that we produced metadata to you. This metadata – assuming we received this from the producing party – includes information like the date a producing party made a production to the SEC (*see* **column AF, EPROD-SEC-DEFPS_20260521**) or the name/email address associated with someone who sent or received an email (*see* **columns BA-BD, EPROD-SEC-DEFPS_20260521**).

Thanks,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE** +1 202 551-5987
**MOBILE** +1 771 217-6383
balldan@sec.gov

 **U.S. Securities and Exchange Commission**

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, July 16, 2026 12:36 PM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>
**Cc:** Timmer, John <TimmerJ@SEC.GOV>; Connor, James <connorja@SEC.GOV>
**Subject:** Re: SEC v. LoPinto -discovery issue

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Daniel,

The SEC's production contains communications between **Richard B. Herman, counsel for Robert Wilkos, and SEC Enforcement personnel, including Pei Chung**, concerning documents bearing my name, documents represented by Mr. Herman as examples of my genuine signature, alleged forged signatures, supporting records, and the LoPinto desktop.

The relevant produced communications include:

- **EPROD-SEC-DEF-000912460 / SEC-EMAILS-E-0002454**

- **EPROD-SEC-DEF-000912470 / SEC-EMAILS-E-0002464**
- **EPROD-SEC-DEF-000912466 / SEC-EMAILS-E-0002460**
- **EPROD-SEC-DEF-000941245–000941246 / SEC-WilkosR-E-0000378–0000379**
- **EPROD-SEC-DEF-000912467–000912468 / SEC-EMAILS-E-0002461–0002462**
- **EPROD-SEC-DEF-000912461–000912462 / SEC-EMAILS-E-0002455–0002456**
- **EPROD-SEC-DEF-000912464 / SEC-EMAILS-E-0002458**
- **EPROD-SEC-DEF-000941248 / SEC-WilkosR-E-0000381**
- **EPROD-SEC-DEF-000912459 / SEC-EMAILS-E-0002453**

Please identify the Bates numbers for every document, attachment, file, image, upload, link, or other material transmitted by or between Richard B. Herman and SEC Enforcement personnel, including but not limited to Pei Chung, that relates to the communications identified above.

This request includes materials sent directly, copied to others, transmitted through Dropbox or any other file-sharing platform, or referenced during related telephone calls or meetings.

Please also identify the Bates numbers for every underlying document referenced in the August 31, 2022 Dropbox submission.

Please identify the Bates numbers for any forensic image, copied data, extracted files, screenshots, inventories, reports, or other materials obtained from the LoPinto desktop.

I have been unable to locate within the SEC's production the complete underlying materials associated with these communications. These materials are relevant to the allegations in the Complaint, the completeness of the Commission's production, and issues concerning the source, creation, authenticity, possession, transmission, and use of the documents at issue.

I reserve all rights. This request is not limited to the specific

materials or issues identified above.

Please respond promptly.

Sincerely,
**Laren Pisciotti**


On Wednesday, June 24, 2026 at 03:03:54 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:


Ms. Pisciotti –

Our supervisor, Jim Connor, is aware of the issues you've raised, and specifically the issue you've brought up with respect to the Sal Marotta recording.  He is copied on this e-mail.  With respect to review more generally, it may be helpful to read this description of how SEC investigations work: https://www.sec.gov/about/divisions-offices/division-enforcement/how-investigations-work.  Specifically, it notes that "Following an investigation, SEC staff present their findings to the Commission for its review" and that the Commission can "authorize the staff to file a case in federal court."

With respect to the recording, we refer you to entry #6 in our privilege log for more information. We again have produced to you all metadata for the recording.

When do you expect to provide us with responses to our Requests for Production and Interrogatories?

Thanks,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**    +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov

 **U.S. Securities and Exchange Commission**

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Ball,

In light of Mr. Timmer's June 23, 2026 opening statement concerning his nomination to serve as an Associate Judge of the District of Columbia Superior Court, Defendant requests clarification regarding who will be assuming responsibility for this matter if Mr. Timmer transitions out of the case.

Before any transition, substitution, or further deposition activity, Defendant respectfully requests supervisory review of the unresolved discovery, attribution, investor-protection, and prejudice issues previously raised.

Supervisory review is especially important because there have been statements indicating that current litigation counsel came onto this matter after the investigation had already begun and were not necessarily involved at the start of the investigation. That creates a risk that present counsel may not have complete firsthand knowledge of the investigation's origin, earlier source/custody decisions, prior communications, related-matter materials, cease-and-desist notices, witness materials, privilege assertions, or corrective/investor-protection decisions.

One specific issue requiring review is EPROD-SEC-DEFPS-001039858 / SEC-USDOJ-E-0000001, titled "Sal Marotta," file name Jerry_Sal_20221218 090509.mp4. Defendant is not attempting to serve new interrogatories by email. Defendant is requesting clarification of the source, custody, chain-of-custody, and related production record for this DOJ-sourced recording.

Please confirm whether the Commission has any chain-of-custody record, transmittal, source/custodian information, DOJ production

communication, authentication material, transcript, summary, notes, metadata, related Bates ranges, or privilege-log entry concerning this recording.

If the Commission's position is that the recording was produced "as produced to" the Commission and no additional non-privileged chain-of-custody, source/custody, transmittal, authentication, transcript, summary, notes, metadata, related-Bates, or privilege-log information exists, please state that clearly after reasonable inquiry.

If any such materials exist but are being withheld, please identify the category withheld, the asserted basis for withholding, and where the material appears on the privilege log or any supplemental log.

Given the unresolved attribution, source/custody, related-matter, investor-protection, and prejudice issues previously raised, Defendant requests that a supervisor or Commission attorney with sufficient institutional knowledge review this issue before depositions proceed.

Defendant also reserves the right to add to, supplement, or clarify these issues as additional information is reviewed, as production defects are identified, as counsel-transition issues are clarified, or as the Commission provides further responses concerning source, custody, chain of custody, privilege-log treatment, related matters, investor-protection issues, and deposition prejudice.

Defendant reserves all rights, including the right to raise this issue with the Court and seek appropriate discovery relief.

Regards,
Laren Pisciotti

On Tuesday, June 23, 2026 at 05:24:52 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Ms. Pisciotti —

As previously stated, we have produced all non-privileged documents from the investigation to you. We produced the recording and its corresponding metadata as it was produced to us. And, consistent with Local Rule 26.2(c), we produced a privilege log, categorizing the documents we withheld based on the asserted privileges. We too have asserted these same privileges in our responses to your Rule 33 and 34 requests. We understand you believe the log is deficient, as you have already raised with the Court in the June 18, 2026 Status Report, ECF No. 91. We disagree for the reasons we raised in the Report.

As for your request that we "supplement[]" our Rule 26 disclosures and Rule 33/34 responses, it is not entirely clear what request you are asking us to supplement. At this time, we do not have anything to supplement. We have responded to your Rule 33 and 34 requests, produced all non-privileged documents from the investigation to you and produced a privilege log. To the extent you are asserting new discovery requests, please let us know. We note, however, that we view many of the requests below as Rule 33 interrogatories. As stated in our responses to your Rule 33 requests, we believe you have already sent the maximum number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

And, as always, we're happy to meet-and-confer with you on the issues you've raised. I'm traveling over the next few days but am completely open Monday (6/29) or Tuesday (6/30). Let me know what works for you, and I can send a calendar.

Thank you,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**   +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov



U.S. Securities and
Exchange Commission

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Tuesday, June 23, 2026 2:20 AM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Timmer, John <TimmerJ@SEC.GOV>; Ball, Daniel <BallDan@SEC.GOV>
**Subject:** Re: SEC v. LoPinto -discovery issue

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

I am writing regarding a time-sensitive discovery issue that should be addressed before any deposition proceeds.

Defendant has now received EPROD-SEC-DEFPS-001039858, source Bates SEC-USDOJ-E-0000001, titled "Sal Marotta," file name Jerry_Sal_20221218 090509.mp4. Although the recording has now been produced, production of the MP4 file alone does not resolve the issue. Defendant does not have DOJ testimony concerning this recording. Defendant has a DOJ-sourced recording, but the production does not disclose the recording's source, origin, custodian, chain of custody, transmittal history, authentication, transcript, summary, review notes, related communications, related Bates ranges, metadata, or privilege-log treatment.

This issue was also raised in the parties' June 18, 2026 status report. Defendant specifically identified EPROD-SEC-DEFPS-001039858 / SEC-USDOJ-E-0000001 as a USDOJ-produced recording titled "Sal Marotta," file name Jerry_Sal_20221218 090509.mp4, and raised concerns that the load file did not identify source, custodian, SEC receipt date, transmitting DOJ office/person, participants, transmittal, subpoena return, chain-of-custody record, transcript, notes, summary, or related source information. Those issues remain unresolved.

The Commission's own examination of Mr. Marotta placed related attribution issues directly at issue. During Mr. Marotta's October 23, 2023 investigative testimony, the Commission questioned him concerning Keyport, Pre-IPO Marketplace, Mr. LoPinto, investor-document handling, funds, subscription documents, PPMs, valuations, investor paperwork, and related follow-up. The Commission also questioned Mr. Marotta about Exhibit 44, including messages concerning stock allegedly bought in Defendant's name or entity without speaking to Defendant, what Mr. LoPinto did with investor money, and whether Defendant had proof that the issue was not caused by her. Mr. Marotta asserted the Fifth Amendment

on follow-up questions concerning those issues.

Mr. Wilkos's February 7, 2024 investigative testimony also directly overlaps with these issues. Mr. Wilkos testified that he overheard Mr. LoPinto speaking with Jerry Sarabella about the prior Airbnb/SEC fine, and further testified that Max Infinity and Jerry Sarabella were purchasing through Pre-IPO Marketplace and were actively getting investors for Pre-IPO Marketplace's Stripe series. Mr. Wilkos's testimony also raises issues concerning document source, alleged forgery, use of Defendant's name, GlobalX-related documents, signature reliability, account authority, investor notice, stock shortfalls, purchase records, and whether names or titles appearing on documents accurately reflected actual control, authorization, or knowledge by Defendant.

Defendant was examined by the Commission on May 10, 2024. During Defendant's testimony, the Commission questioned Defendant broadly regarding the pre-IPO business, Mr. LoPinto, Mr. Wilkos, offering documents, stock ownership, share shortfalls, customer funds, bank accounts, use of Defendant's name, and related attribution issues. However, Defendant was not questioned about EPROD-SEC-DEFPS-001039858, the DOJ-sourced Sal/Jerry recording, "Jerry," Gene Sarabella, Max Infinity, Max Infinity-related persons or principals, related cease-and-desist notices, or related materials bearing on alleged misuse or attribution of Defendant's name, entity, GlobalX-related name, documents, accounts, offering materials, communications, business records, bank/payment channels, or investor communications attributed to Defendant.

The concern is not limited to DOJ. The concern is that a DOJ-sourced recording appears to overlap with Marotta, Wilkos, Jerry/Gene Sarabella, Max Infinity, related matters, investor communications, alleged stock shortfalls, bank/payment channels, and use or attribution of Defendant's name or entity, but the production does not disclose where the recording came from, how it was obtained, when the Commission received or reviewed it, whether it was used before testimony or before the Complaint,

whether it came from another related matter, or whether surrounding materials were produced, withheld, or logged.

This issue is not ordinary fact discovery only. Defendant is not merely asking for additional documents to prepare general defenses. Defendant is identifying prejudice from the Commission's possession of overlapping evidence that should have been explored before the Commission proceeded on an attribution theory against Defendant.

The Commission had or was on notice of multiple overlapping sources concerning the same subject matter: Defendant's cease-and-desist materials concerning alleged misuse or attribution of her name/entity; Mr. Wilkos's testimony concerning document source, alleged forgery, use of Defendant's name, GlobalX-related documents, stock shortfalls, investor issues, and Jerry Sarabella/Max Infinity; and the DOJ-sourced Sal/Jerry recording. Taken together, those materials bear directly on whether disputed documents, accounts, offering materials, investor communications, payment channels, and stock-shortfall issues can fairly be attributed to Defendant, or whether Defendant's name, entity name, GlobalX-related name, documents, accounts, communications, or business records were used, attributed, or misrepresented by others without Defendant's authorization, knowledge, or control.

The prejudice to Defendant is that these issues were not fairly explored with Defendant before or during her May 10, 2024 testimony, before the Complaint, or before depositions were noticed, even though they bear directly on Defendant's third-party-attribution, lack-of-authorization, lack-of-control, and victim-position defenses. If the Commission had cease-and-desist materials, Wilkos testimony, and a DOJ-sourced recording overlapping with Sal/Jerry/Max Infinity/Gene Sarabella, then the Commission had evidence or notice that the attribution issue required further investigation before treating Defendant as responsible for disputed documents, accounts, investor communications, payment channels, and alleged stock shortfalls.

Defendant also needs to know whether the Commission took any steps to protect investors, preserve disputed evidence, prevent further attribution of disputed records to Defendant, or correct or clarify information after receiving notice that Defendant contended her name/entity and GlobalX-related name were being misused or misattributed.

Defendant therefore requests clarification not only for fact discovery, but to determine whether the Commission's attribution theory was developed on an incomplete or unfair record, whether Defendant was deprived of a meaningful opportunity to address evidence supporting her victim/third-party-attribution position, and whether due-process prejudice, preclusion, reopening of testimony, sanctions, or dismissal may be warranted.

Defendant also requests clarification as to whether EPROD-SEC-DEFPS-001039858 or any related materials originated from, were obtained in, were sealed in, were produced in, were reviewed in connection with, or were shared from any Max Infinity-related criminal, SEC, DOJ, FBI, USAO, EDNY, indictment, sealed matter, investigative file, cooperation material, witness material, court-authorized disclosure, or any other potentially related civil, criminal, regulatory, administrative, investigative, or enforcement matter involving overlapping parties, counsel, witnesses, entities, transactions, documents, recordings, investors, or timeframes.

Defendant also requests clarification concerning significant counsel-overlap and counsel-related information-sharing issues involving not only Defendant, but also other defendants, witnesses, related parties, third parties, entities, counsel, law firms, and related proceedings. This includes potential overlap among counsel or counsel-related representatives in Max Infinity-related matters, Pre-IPO Marketplace-related matters, related SEC matters, related DOJ/USAO matters, related EDNY proceedings, and any other potentially related civil, criminal, regulatory, administrative, investigative, or enforcement matters involving overlapping parties, counsel, witnesses, entities, transactions, documents, recordings, investors, or timeframes. This request does not waive, disclose, or

rely upon any privileged communications involving Defendant or Defendant's counsel. Defendant is not requesting privileged mental impressions.

Defendant also requests that the Commission confirm what, if any, corrective, protective, investigative, investor-protection, preservation, disclosure, or record-integrity action the Commission has taken in response to Defendant's cease-and-desist materials, Mr. Wilkos's testimony, the DOJ-sourced Sal/Jerry recording, and related Max Infinity/Jerry/Gene Sarabella materials. This includes what the Commission has done to protect Defendant's victim/third-party-attribution position, to prevent further misuse or attribution of Defendant's name/entity or GlobalX-related name, to preserve and clarify disputed records, and to address potential investor harm, stock shortfalls, ownership issues, payment-channel issues, or investor communications involving disputed attribution.

Please treat this letter as a request for supplementation of the Commission's Rule 26 disclosures and Rule 33/34 responses to the extent the current responses and productions do not identify the source, custodian, chain of custody, related Bates ranges, metadata, withheld materials, or privilege-log entries concerning EPROD-SEC-DEFPS-001039858 and related Max Infinity/Jerry/Gene Sarabella/cease-and-desist materials.

For EPROD-SEC-DEFPS-001039858 and related Sal/Jerry, Max Infinity, Gene Sarabella, Marotta, Wilkos, cease-and-desist, counsel-overlap, corrective-action, investor-protection, and related-matter materials, please state which of the following applies:

1. the Commission will provide the non-privileged source, custody, timing, chain-of-custody, metadata, related-Bates, transcript, summary, authentication, transmittal, corrective-action, and investor-protection information;

2. the Commission is withholding some or all related materials or information, in which case please identify the category withheld, the basis for withholding, whether any non-privileged factual

portion can be produced or summarized, and where the material appears on the privilege log or any supplemental log; or

3. after reasonable inquiry, the Commission contends that no additional non-privileged source, custody, timing, chain-of-custody, metadata, related-Bates, transcript, summary, authentication, transmittal, corrective-action, investor-protection, related-matter, or privilege-log information exists.

Please confirm as soon as possible, and before any deposition proceeds:

1. when DOJ first obtained the Sal/Jerry recording;
2. when the Commission first obtained, reviewed, accessed, summarized, transcribed, discussed, or relied on the recording;
3. who created the recording, who provided it to DOJ, how DOJ obtained it, who was the custodian, and whether any transmittal, chain-of-custody, authentication, transcript, summary, review, or metadata materials exist;
4. whether the Commission or DOJ possessed, reviewed, accessed, summarized, transcribed, discussed, relied on, withheld, or logged the recording or related DOJ-sourced materials before Mr. Marotta's October 23, 2023 testimony, Mr. Wilkos's February 7, 2024 testimony, Defendant's May 10, 2024 testimony, the filing of the Complaint, or the noticing of depositions;
5. whether the recording was shown to, discussed with, used to question, or compared against testimony or statements from Defendant, Mr. Marotta, Mr. Wilkos, Mr. LoPinto, Max Infinity, Gene Sarabella, "Jerry," or any other witness or third party;
6. whether "Jerry" refers to Gene Sarabella, another individual associated with Max Infinity, or another person, and what non-privileged information supports the Commission's or DOJ's identification of "Jerry";

7. whether the recording or related materials concern cease-and-desist notices, Max Infinity, Gene Sarabella, alleged misuse of Defendant's personal name, entity name, GlobalX-related name, documents, accounts, offering materials, investor communications attributed to Defendant, bank/payment channels, or investor funds;

8. whether EPROD-SEC-DEFPS-001039858 or any related materials originated from, were obtained in, were sealed in, were produced in, were reviewed in connection with, or were shared from any Max Infinity-related matter, related SEC matter, related DOJ/USAO matter, related EDNY proceeding, or any other potentially related civil, criminal, regulatory, administrative, investigative, or enforcement matter involving overlapping parties, counsel, witnesses, entities, transactions, documents, recordings, investors, or timeframes;

9. whether the Commission or DOJ received, reviewed, relied on, produced, withheld, or logged any materials reflecting significant counsel overlap, shared-counsel issues, common-interest assertions, joint-defense communications, counsel-related document transfers, witness-preparation communications, third-party information-sharing, investor communications, or privilege-related communications involving defendants, witnesses, related parties, third parties, entities, counsel, law firms, or related proceedings, without requiring disclosure of Defendant's privileged communications;

10. whether the Commission has taken any corrective, protective, investigative, investor-protection, preservation, disclosure, or record-integrity action in response to Defendant's cease-and-desist materials, Mr. Wilkos's testimony, the DOJ-sourced Sal/Jerry recording, and related Max Infinity/Jerry/Gene Sarabella materials, including any action to protect Defendant's

victim/third-party-attribution position, prevent further misuse or attribution of Defendant's name/entity or GlobalX-related name, preserve and clarify disputed records, or address potential investor harm, stock shortfalls, ownership issues, payment-channel issues, or investor communications involving disputed attribution; and

11. where any related withheld materials are reflected on the Commission's privilege log.

Please also identify all related Bates ranges and produce any non-privileged surrounding materials concerning the recording, including transmittal emails, chain-of-custody records, authentication materials, transcripts, summaries, notes, memoranda, metadata, witness communications, attorney communications, and communications with DOJ, FBI, USAO, FINRA, NJBS, Max Infinity, Max Infinity's principals, Gene Sarabella, Mr. Marotta, Mr. Wilkos, Mr. LoPinto, "Jerry," or any third party concerning the recording.

Please also confirm whether the Commission has produced the native file and all available metadata for EPROD-SEC-DEFPS-001039858, including file-creation date, modification date, extraction date, source path, custodian, producing source, hash value, chain-of-custody information, and any transcription or review notes.

Defendant does not seek privileged mental impressions. However, Defendant requires the non-privileged surrounding context necessary to determine what the Commission and DOJ obtained, reviewed, used, withheld, failed to log, or failed to disclose concerning attribution, impeachment, related-matter, investor-protection, corrective-action, and potentially exculpatory evidence.

If any related materials are being withheld, please identify where they are logged or supplement the privilege log sufficiently to show the date, participants, general subject matter, privilege asserted, any third-party disclosure, and the basis for the asserted protection.

Defendant reserves all rights and does not concede authenticity,

admissibility, completeness, authorization, control, knowledge, attribution, or responsibility for any disputed document, communication, account, transaction, recording, offering material, or investor communication merely because it appears in the Commission's production or bears Defendant's name, entity name, GlobalX-related name, or related identifying information.

Defendant does not believe depositions can fairly proceed until the Commission provides the requested clarification, identifies related Bates ranges, produces non-privileged surrounding materials, and supplements any privilege log necessary to permit meaningful review and challenge. If the Commission proceeds without providing this information, Defendant reserves the right to seek all appropriate relief, including adjournment of depositions, supplemental production, supplemental privilege logs, in camera review, reopening or supplementing testimony, preclusion, adverse inference, sanctions, and dismissal based on due-process prejudice, incomplete disclosure, delayed disclosure, inadequate logging, or unfair use of attribution evidence.

Please confirm as soon as possible whether the Commission will provide the requested clarification and materials before any deposition proceeds. Please also provide dates and times for a prompt meet-and-confer.

Regards,
Laren Pisciotti

On Monday, June 22, 2026 at 03:40:26 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Good Afternoon –

We checked internally with our processing team, and it looks like it's an Excel formatting issue. Our processing team converted this file to a .csv file, and this resolved the errors (without changing any of the underlying data or information). See attached.

Please let us know if you have any other issues reviewing the file.

Thanks,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**    +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov


**U.S. Securities and Exchange Commission**

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Monday, June 22, 2026 11:34 AM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Timmer, John <TimmerJ@SEC.GOV>; Ball, Daniel <BallDan@SEC.GOV>
**Subject:** Re: SEC v. LoPinto - Status Report

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

The attached screenshots show that the produced Excel file "EPROD-SEC-DEFPS_20260616 (5).xlsx" did not open normally.

Excel reported that it found a problem with content in the workbook and required recovery/repair before opening. The workbook then opened in Protected View with the file marked as "Repaired."

This is a production issue. I cannot verify that the workbook produced by the Commission is complete, accurate, fulsome, or unaltered after Excel's repair process.

Please provide a clean replacement copy of this file. If the Commission contends no replacement is necessary, please confirm in writing that the file was produced in complete, accurate, and

fulsome form, that no content was altered, removed, or affected by the repair process, and that the Commission does not consider this to be a discovery-production issue.

Laren

On Thursday, June 18, 2026 at 03:22:42 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Thank you.

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE** +1 202 551-5987
**MOBILE** +1 771 217-6383
balldan@sec.gov


U.S. Securities and Exchange Commission

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, June 18, 2026 3:20 PM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Timmer, John <TimmerJ@SEC.GOV>
**Cc:** Ball, Daniel <BallDan@SEC.GOV>
**Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good to file. I raised the additional in email so they are documented.

Thank you.
Laren

On Thursday, June 18, 2026 at 03:16:39 PM EDT, Timmer, John <timmerj@sec.gov> wrote:

Ms. Pisciotti,

We didn't even know what you were going to raise in the report until yesterday afternoon. And

we haven't made any changes to our disputes section since receiving your submission. Finally, the only change to the joint section draft Mr. Ball sent you yesterday at 4:46 was to include <u>your</u> words from the e-mail <u>you sent</u> this morning, to avoid misleading the Court as to the status of the discovery requests. You've had more than three hours to review that minor edit.

**Mr. Aras and Mr. Pisciotti, we all need to have this report filed to comply with the Court's order.  <u>Please provide us your sign off, or notify us if you refuse to do so.</u>**

John

---

**From:** Laren Pisciotti <<u>larenpisciotti@yahoo.com</u>>
**Sent:** Thursday, June 18, 2026 1:32 PM
**To:** Jon-Jorge Aras <<u>jonjorge@aras-law.com</u>>; Timmer, John <<u>TimmerJ@SEC.GOV</u>>
**Cc:** Ball, Daniel <<u>BallDan@SEC.GOV</u>>
**Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Will review. Need some time. I was told no changes on your end. You could have sent in advance as well.

On Thursday, June 18, 2026 at 01:30:25 PM EDT, Timmer, John <<u>timmerj@sec.gov</u>> wrote:

Ms. Pisciotti,

I understand that we disagree. But are you signing off on filing the report or are you requesting some kind of change to the text?

John

---

**From:** Laren Pisciotti <<u>larenpisciotti@yahoo.com</u>>
**Sent:** Thursday, June 18, 2026 1:28 PM
**To:** Jon-Jorge Aras <<u>jonjorge@aras-law.com</u>>; Timmer, John <<u>TimmerJ@SEC.GOV</u>>
**Cc:** Ball, Daniel <<u>BallDan@SEC.GOV</u>>
**Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

I dispute the Commission's characterization of my position as delay, improper, irrelevant, or merely an authenticity issue. My disputes concern discovery prejudice, including production usability, metadata, source/custody, version control, family-document relationships, privilege logging, withheld materials, June 16/17 production timing, DOJ/related-matter materials, investor communications, and whether disputed materials were used, shown, summarized, or characterized before source and attribution were established.

I also dispute the statement that any production delay stems from me. I did not waive objections by agreeing to review or test a searchable-PDF reproduction, and the later June 16/17 production and related metadata/source issues are independent disputes.

I further dispute the Commission's categorical relevance/work-product position as to post-filing investor communications and internal/agency communications where those materials concern disputed attribution, source/custody, investor harm, reliance, damages, corrective action, or use of disputed materials with witnesses, investors, subpoena recipients, or third parties.

The Commission's footnote confirms its response was prepared without seeing Defendants' written dispute sections. I therefore do not agree that the Commission's section fairly responds to my actual written position. I preserve all objections and request that my position be filed as provided, without alteration or characterization.

Laren Pisciotti


On Thursday, June 18, 2026 at 01:06:22 PM EDT, Timmer, John <timmerj@sec.gov> wrote:


Attached please find an clean PDF of the status report.

Please provide your sign-off on the status report by 3 PM.

Thanks,

John

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, June 18, 2026 12:45 PM
**To:** Timmer, John <TimmerJ@SEC.GOV>; Jon-Jorge Aras <jonjorge@aras-law.com>
**Cc:** Ball, Daniel <BallDan@SEC.GOV>
**Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

John,

I note that the draft circulated does not appear to include the Commission's portion or GlobalX's/Jon-Jorge's portion. I cannot agree to the joint status report or authorize filing on my behalf until I have reviewed the Commission's portion and the complete final version proposed for filing.

Please circulate the Commission's portion and the complete final draft before filing.

Please also provide both your and Mr. Ball's employment history at the Commission, including relevant dates, so I can understand whether the statements made during yesterday's call were factually accurate and what relevance, if any, they have to the earlier-investigation, source/custody, communications, corrective-action, investor-protection, OIG, and record-integrity issues I have raised.

I also remain concerned that issues involving Ms. Pei Chung/Cheung, Associate Director, and statements made by or concerning my former counsel may bear on whether the charging, investigative, or supervisory review process was affected by personal views, counsel-related issues, overlapping representations, other clients or matters, political considerations, potential government abuse, improper governmental purpose, or other improper considerations. My concern is that the prosecution of this case may have been overzealous or influenced by issues outside the merits, including issues involving attorneys and other clients during the same period as my representation.

For that reason, I again request that these issues be reviewed by appropriate Commission personnel outside the supervisors, attorneys, or personnel involved in authorizing, recommending, or pursuing the charges.

Defendant reserves all rights, objections, and requests for relief stated in her section and otherwise.

Laren Pisciotti

On Thursday, June 18, 2026 at 12:00:39 PM EDT, Jon-Jorge Aras <jonjorge@aras-law.com> wrote:

John,

For the GlobalX portion, you can insert the following language:

"GlobalX hereby incorporates and restates the discovery disputes outlined by Ms. Pisciotti above."

Best,

Jon-Jorge

On Thu, Jun 18, 2026 at 11:50 AM Timmer, John <TimmerJ@sec.gov> wrote:

> I sent you the draft before I received your report, so I didn't have it. I am only trying to get everyone's sign on for the joint portion; I will include your "discovery dispute" portion when we file.
>
> The prior joint status draft suggested that you would be responding to our discovery requests on June 18, which you have informed us is no longer the case. I simply updated that section to include the text of your e-mail message to us.
>
> I'm happy to talk on the phone if it's easier – 202-551-7687
>
> ---
>
> **From:** Laren Pisciotti <larenpisciotti@yahoo.com>
> **Sent:** Thursday, June 18, 2026 11:47 AM
> **To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
> **Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Since you pulled the updated information from my draft and to avoid confusion, please provide final form, and i will make an adjustments or recommendations necessary. It seems you pulled a piece out of my report, but didn't attach it therein.

Laren

On Thursday, June 18, 2026 at 11:42:09 AM EDT, Timmer, John <timmerj@sec.gov> wrote:

Good morning,

In light of that, and to avoid misleading the Court as to the status of discovery, I have updated the joint status report.

Mr. Aras and Ms. Pisciotti, please confirm that the joint portion of the status report (attached) is acceptable so that, per the Court's instructions, we can include you on the signature block.

Best,

John

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, June 18, 2026 11:10 AM
**To:** Jon-Jorge Aras <jonjorge@aras-law.com>; Ball, Daniel <BallDan@SEC.GOV>
**Cc:** Timmer, John <TimmerJ@SEC.GOV>
**Subject:** Re: SEC v. LoPinto - Status Report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Counsel,**

**because of the unresolved production, metadata, source/custody, privilege-log, authenticity, attribution, and record-integrity issues identified in the joint status report, including the June 16-dated production received June 17 and the multiple Accellion transmissions/reproductions, Defendant is not in a position to provide complete interrogatory or RFP responses today without prejudice. Defendant preserves all objections and will supplement after meaningful review, corrected production/source information, and Court guidance.**

**Laren Pisciotti**

On Wednesday, June 17, 2026 at 04:45:36 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Ms. Pisciotti, Mr. Aras – as I mentioned on the call, Mr. Marotta's new counsel confirmed the depo date of July 15. I made a revision to reflect this. I also updated Mr. Cappuccio's depo date based on John's email to you both yesterday at 10:21 AM EST. Thank you.

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE** +1 202 551-5987
**MOBILE** +1 771 217-6383
balldan@sec.gov

 **U.S. Securities and Exchange Commission**

**From:** Ball, Daniel
**Sent:** Wednesday, June 17, 2026 3:32 PM
**To:** larenpisciotti@yahoo.com; Jon-Jorge Aras <jonjorge@aras-law.com>
**Cc:** Timmer, John <TimmerJ@SEC.GOV>
**Subject:** SEC v. LoPinto - Status Report

Ms. Pisciotti, Mr. Aras –

We made two minor changes to the attached status report (in track changes):

- You both likely should've just received a link to our most recent document production. We made an edit in the attached to reflect this production.

- We received word from Mr. Marotta that he's in the process of retaining new counsel. His new counsel asked that we postpone Mr. Marotta's deposition currently scheduled for June 22 to a later date. We're in the process of finalizing this new date with counsel and will

revert back when we know this.

Speak to you both shortly.

Thanks,

Daniel

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**   +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov


**U.S. Securities and Exchange Commission**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Daniel,

Thank you — I appreciate the Commission agreeing to reproduce the files in searchable PDF form and provide the Excel reference spreadsheet.

Please include the metadata fields listed, to the extent that metadata was provided to or preserved by the Commission. Please also provide tracking information once the production is mailed by overnight delivery.

Based on the Commission's agreement and timely receipt of the searchable PDF reproduction and metadata spreadsheet, my Rule 33 and Rule 34 responses and objections will be served by June 18, 2026.

The searchable PDFs and metadata spreadsheet may help fill the gaps and allow me to better understand the universe of documents, accounts, communications, and paperwork at issue, including materials in the Commission's possession that were produced to the Commission and that bear or are allegedly associated with my name, signature, email address, GlobalX VC LLC, any other entity allegedly tied to me, or any alleged authority associated with me. This is necessary for me to evaluate the scope and impact of those materials, including authenticity, attribution, source,

completeness, metadata, chain of custody, and any prejudice to my ability to respond and defend myself.

This does not waive any objections or concede that the searchable PDF reproduction cures the production-access, usability, completeness, authenticity, attribution, source, chain-of-custody, or "as received" issues previously raised. I reserve all rights, including the right to supplement after review of the reproduced production and metadata spreadsheet.

Thank you again, and have a good Memorial Day weekend.

Laren Pisciotti

On Thursday, May 21, 2026 at 04:58:17 PM EDT, Ball, Daniel <balldan@sec.gov> wrote:

Ms. Pisciotti —

The reproduction and conversion to searchable PDF will take roughly 2 weeks. We will mail the production to you by overnight delivery when ready. Given this timing, we are amenable to you responding to our Rule 33 and Rule 34 requests by June 18.

As explained to you during the meet-and-confer on May 11, the production will be accompanied by an Excel spreadsheet. This spreadsheet will contain metadata for the following fields, to the extent that this metadata was provided by the producing party – we have preserved the metadata provided to us. If metadata was not provided to us for a particular field by the producing party, the field in the excel export will be left blank.

| Eprod Export Field Name |
| --- |
| SECFIRST |
| SECLAST |
| SECFIRSTATTACH |
| SECLASTATTACH |
| Firstbates |
| Lastbates |
| FirstAttach |
| LastAttach |
| AttachID |

| |
|---|
| Attachments |
| AttachRange |
| ePRODDATE |
| Date_Time_Accessed |
| Date_Time_Accessed (time) |
| Description |
| Document_Type |
| Hash_MD5 |
| HASH_SHA256 |
| Header |
| INTFILEPATH |
| Author |
| Last Author |
| MessageID |
| Mimetype |
| Original_Firstbates |
| Original_Lastbates |
| FilePath |
| Page_Count |
| Printed_Date |
| Printed_Date (Time) |
| Producing Party |
| Production Date |
| TimeZone |
| Title |
| Date Received |
| Date Received (Time) |
| Office Flags |
| Read |
| EmailRecipientName |
| Creation Date |
| Creation Date (Time) |
| Custodian |
| File Extension |
| Filename |
| File Size |
| Location |
| Importance |
| Modification Date |
| Modification Date (Time) |
| |

| | |
|---|---|
| Sent Date | |
| Sent Date (Time) | |
| Subject | |
| CC | |
| BCC | |
| TO | |
| FROM | |
| Family Date | |
| Family Date (Time) | |
| Textpath | |
| NativeLink | |

**Daniel J. Ball**
Attorney
Division of Enforcement

**OFFICE**    +1 202 551-5987
**MOBILE**   +1 771 217-6383
balldan@sec.gov


**U.S. Securities and Exchange Commission**

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, May 21, 2026 3:20 PM
**To:** Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** Re: SEC v Pisciotti et al - draft status report

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

John,

Thank you.

Based on the Commission's agreement to reproduce the files in searchable PDF form with a reference spreadsheet including all metadata provided to the Commission, I propose that my response deadline be adjusted to 14 days after receipt of the searchable PDF reproduction and corresponding metadata/reference spreadsheet. Please also confirm the expected date of reproduction and delivery.

This proposed adjustment is based on the current access and usability issues and the need to review the reproduced materials in a reasonably usable form before serving responses and objections. Given the issues raised concerning alleged forgeries, disputed attribution, authorization, source, and documents that may be alleged to bear my name, signature, entity, email address, or authority, I need to understand the universe of documents at issue, what documents exist, and which documents raise issues concerning authenticity, authorization, attribution, source, completeness, metadata, or chain of custody.

Please confirm that, to the extent metadata was provided to or maintained by the Commission, the metadata/reference spreadsheet will identify Bates ranges, beginning and ending Bates numbers, file names, original file paths or folder paths, producing party/source, source custodian, document relationships, document family relationships including emails and attachments, native-file links, file type, document date, sent/received dates, author, sender, recipients, CC/BCC fields, hash values, text/OCR references, metadata fields, and any files that cannot be converted.

To the extent any metadata fields are unavailable for particular documents, please identify the unavailable fields and, where known, whether the metadata was not provided to the Commission, was unavailable from the source, or was not maintained in the production.

Please also identify, where available, whether materials were reproduced to me "as received" from a third party or other source, and identify the producing party/source associated with those materials. This is necessary to distinguish source/status information from any question of authentication, verification, attribution, or reliance.

This information is necessary to evaluate source, chain of custody, authenticity, completeness, attribution, and any later evidentiary issues.

If the Commission has different proposed timing, please let me know.

This does not waive any objections or concede that the searchable PDF reproduction will cure the production issues, that the original production was reasonably usable, or that the reproduced production will be complete, authenticated, properly organized, or sufficient. I reserve all rights.

Laren Pisciotti

On Thursday, May 21, 2026 at 10:17:54 AM EDT, Timmer, John <timmerj@sec.gov> wrote:

Ms. Pisciotti,

We can re-produce the files in searchable PDF form. Along with the PDFs, we will produce a reference spreadsheet that can include all of the metadata that was provided to us. As mentioned on our earlier call, the spreadsheet may work slowly given all of the information contained. We understand you to be requesting all of the metadata provided to us and searchable PDFs and will proceed accordingly.

With respect to "adjust[ing]" your response deadline of May 22 (tomorrow), please propose a new date by which you can respond.

Best,

John

John B. Timmer
Senior Trial Counsel | Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E., Washington, D.C. 20549
(202) 551-7687 (office) | (202) 735-4974 (cell)
TimmerJ@sec.gov

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Thursday, May 21, 2026 9:32 AM
**To:** Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** Re: SEC v Pisciotti et al - draft status report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

John,

I am following up on the Commission's prior offer to reproduce the production in PDF form.

After additional review, including review of the hard-drive production, the access and usability issues remain. The hard-drive and Accellion/load-file productions present issues including files that do not open or load, files showing question marks, and difficulty identifying document boundaries, Bates/file relationships, source information, and metadata from the current structure.

In the current state, it is not possible for me to meaningfully review the production, evaluate the documents, or prepare responses and objections without risking prejudice to my rights and due process.

Please confirm whether the Commission will provide the production in searchable PDF format with metadata/reference sheets that preserve Bates ranges, file paths, source/producing party, document relationships, native-file links, metadata fields, and any files that cannot be converted. The production should be provided in a usable form that permits meaningful review and should not function as a data dump without sufficient organization, source information, document relationships, and metadata needed to understand the materials.

Please also confirm whether the Commission will agree that my discovery response deadline, including the May 22 response deadline, should be adjusted while these production-access and usability issues are being addressed.

This does not waive any objection or concede that the original productions were reasonably usable, complete, authenticated, properly organized, or sufficient. It also does not concede that searchable PDFs will cure the issues.

I reserve all rights.

Laren Pisciotti


On Monday, May 18, 2026 at 12:32:16 PM EDT, Laren Pisciotti <larenpisciotti@yahoo.com> wrote:


John,

Thank you.

To clarify the record, a joint filing is joint. The filed Joint Status Report disclosed that GlobalX did not respond and was not included as a signatory, but it did not disclose that I never received or approved the Commission's proposed section, selected testimony excerpts, exhibits, or final assembled filing before submission.

I provided my section in advance after the Commission requested it "so that we have time to draft a response." I was not given the same opportunity to review or respond to the Commission's final presentation before it was filed as a joint status report.

Given the extensive accusations and selected testimony/exhibits included in the Commission's portion, I should have been provided the Commission's proposed section and final assembled filing before submission.

In light of the Commission's statements concerning the volume and characterization of my emails, I will limit further email correspondence to necessary procedural, scheduling, meet-and-confer, and discovery matters.

I have submitted a limited response so the issue can be addressed through judicial review. The Court can decide these issues.

Have a good day.

Laren Pisciotti

On Monday, May 18, 2026 at 10:54:05 AM EDT, Timmer, John <timmerj@sec.gov> wrote:

Ms Pisciotti –

I don't have a record or recollection of you asking to review our section. We asked you to provide your section to us so that we would be able to respond. We did not "approve" or edit your section, as you can see (bolded) in my email below. I have already informed you that I did not alter anything in your section. You are free to verify that however you choose.

The Court ordered us to file our report on Friday. I told you I planned to add in our section and file by the end of the day at 943 AM on Friday and asked for your position on a typo fix and an

edit to the joint section. Not having heard from you at 425 PM, I sent you an update and made myself available through COB to discuss if you had concerns. I did not include our proposed edit to the joint section because you did not approve it.

Because Mr. Aras never responded, I did not feel comfortable stating that he approved the report. Because you had not indicated your position regarding that change, I clearly indicated that the SEC alone was responsible for making that change.

Best,
John

John B. Timmer
Senior Trial Counsel | Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E., Washington, D.C. 20549
(202) 551-7687 (office) | (202) 735-4974 (cell)
TimmerJ@sec.gov

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Saturday, May 16, 2026 1:24 AM
**To:** Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** Re: SEC v Pisciotti et al - draft status report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

John,

Thank you for the update.

I wanted to raise a concern regarding the process surrounding the joint report. I submitted my section on Wednesday as agreed, however both emails sent today did not include any draft containing the Commission's position or a final integrated version reflecting all revisions, footnotes, and changes together before the report was filed.

I understand parties may prepare their sections separately, however since this was presented as a joint report, I would have expected an opportunity to review the completed filing, particularly where additional revisions and footnotes were later added.

Can you please clarify why I was required to submit my section on Wednesday, but the Commission's section was not submitted or circulated during that same timeframe prior to filing?

I approved the version of my section that was sent to the Commission on Wednesday. However, I do not know what revisions, additions, or changes may have been made afterward within the final integrated filing, as I was never provided the completed version before submission and therefore had no opportunity to confirm whether my approved language remained unchanged in context within the final filing.

For the avoidance of doubt, I approved my submitted section as sent on Wednesday, but not the final combined filing in its entirety.

Thank you, Laren

On Friday, May 15, 2026 at 04:24:43 PM EDT, Timmer, John <timmerj@sec.gov> wrote:

Good afternoon,

I have omitted the initial disclosures language I mentioned below, because I have not heard back. I have fixed the typo in the Case Status section but have not altered anything in Defendant Pisciotti's section.

I added in a footnote on page 1 stating that the SEC notes that GlobalX did not respond and is not included as a signatory to the report. I also include on page 9 the language I described below stating that GlobalX did not provide a position and have included a footnote explaining that the SEC proposed the included language but it was not approved by all parties.

I plan to add our position to the attached version and file this at 5 PM before I leave for the day. Until then, I am available at 202-551-7687 or via email.

Have a good weekend,

John

---

**From:** Timmer, John
**Sent:** Friday, May 15, 2026 9:43 AM
**To:** Laren Pisciotti <larenpisciotti@yahoo.com>; Ball, Daniel <BallDan@SEC.GOV>

**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** RE: SEC v Pisciotti et al - draft status report

Ms. Pisciotti,

I have accepted all your edits. Thanks for sending them over.

Rather than leave the GlobalX section blank, which might cause the Court to think we mistakenly left it out, I have proposed the line "Defendant GlobalX has not provided a position." I also made two other edits to the Section II in redline. One is a typo fix. The other tracks the language from part II.B of our initial disclosures.

I noticed that the font of your section is mostly in Times New Roman but has a couple of sections in Calibri – would you like me to make it all Times New Roman?

If these changes are OK with you, I will add in the SEC's position and get this on file by the end of the day.

Best,
John

---

**From:** Laren Pisciotti <larenpisciotti@yahoo.com>
**Sent:** Wednesday, May 13, 2026 4:08 PM
**To:** Ball, Daniel <BallDan@SEC.GOV>; Timmer, John <TimmerJ@SEC.GOV>
**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** Re: SEC v Pisciotti et al - draft status report

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

John,

Attached is the revised draft with Defendant Pisciotti's position inserted directly into Section III.A in place of "See Exhibit A."

I also updated the case-status chart to state "Completion of all discovery," consistent with the wording of the Court's minute entry, and revised the deposition-scheduling sentence to reflect that the parties have communicated regarding deposition scheduling while Defendant Pisciotti continues to raise unresolved production, testimony-related, usability, access, preservation, and record-integrity issues relevant to deposition

preparation.

Please let me know if there is anything else needed.

Laren Pisciotti

On Wednesday, May 13, 2026 at 10:20:58 AM EDT, Timmer, John <timmerj@sec.gov> wrote:

Good morning,

I'm following up on this e-mail in an effort to avoid scheduling depositions on dates that would pose a conflict for you. If we do not hear from you by COB, we will proceed with scheduling depositions on dates that are convenient for us and the witnesses.

Best,

John

---

**From:** Timmer, John
**Sent:** Friday, May 8, 2026 11:25 AM
**To:** Laren Pisciotti <larenpisciotti@yahoo.com>; Ball, Daniel <BallDan@SEC.GOV>
**Cc:** Jon-Jorge Aras <jonjorge@aras-law.com>
**Subject:** SEC v Pisciotti et al - scheduling

Ms. Pisciotti & Mr. Aras,

We are looking ahead to the summer months for deposition scheduling. Currently, we are looking at the weeks of June 15-July 19 and August 3-14 and August 24-28 for setting depositions. Could you please let us know any unavailable days you have during that period so that we can try to avoid any scheduling conflicts?

Best,

John

John B. Timmer
Senior Trial Counsel | Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E., Washington, D.C. 20549
(202) 551-7687 (office) | (202) 735-4974 (cell)
TimmerJ@sec.gov